MANDAMUS.

## Page, Second Auditor, *vs* Hardin.

APPEAL FROM THE FRANKLIN CIRCUIT.

*Case* 158.

*Mandamus. Judicial power. Executive power. Officers and offices.*

September 30.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Case stated.

AT the October term, 1846, of the Franklin Circuit Court, Benjamin Hardin filed his petition, setting forth his appointment, on the 16th day of January, 1845, to the office of "Secretary of State of the Commonwealth of Kentucky," by a commission from his Excellency, William Owsley, Governor, by and with the advice and consent of the Senate: To have and to hold the same (office,) with all the rights and emoluments thereunto

legally appertaining, during good behavior, and until the end of my (his) administration;" and averring that he had accepted the said office, taken the requisite oaths and entered upon its duties; that under the *authority of the act of December 24, 1805, he had, with the assent of the Governor, appointed A. S. Mitchell his assistant, by whom, acting in the name of the Secretary of State, according to law, and by the petitioner, all the duties pertaining to the office of Secretary of State have been faithfully performed; and that he has behaved himself well in the office of Secretary of State. He alledges that on the 12th day of October, 1846, he had demanded from Thomas S. Page, Second Auditor, at his public office, a warrant on the Treasurer for the amount of one quarter year's salary, due him for his services as Secretary of State, for the quarter year ending on the 30th of September, 1846, according to law and usage in such case, but that said Page refused and still refuses to issue his warrant, &c. Wherefore he prays for a rule against the Second Auditor, to show cause why a mandamus should not issue requiring him to issue his warrant, &c., for said quarter year's salary.

Upon this petition a rule to show cause, &c., was made, to which the Second Auditor responded, first protesting against the right of the petitioner to be heard upon the matters of the petition, and then stating that on the first day of September, 1846, the Hon. William Owsley, Governor, &c., caused to be filed in his office, the following extract from the Executive Journal:

"September 1st, 1846. Whereas Benjamin Hardin, by his failure, wilful neglect and refusal to reside at the Seat of Government, and perform the duties of Secretary, has abandoned said office, and said office, in the judgment of the Governor, has become vacant for the causes aforesaid, it is, therefore, declared by the Governor, and ordered to be entered on the Executive Journal, that the office of Secretary has become and *is* vacant. Wherefore, to fill said vacancy, the Governor this day commissioned George B. Kinkead, Esq. to be Secretary till the end of the next General Assembly of Kentucky.

*Page, Second Auditor vs Hardin.*

And George B. Kinkead having qualified to his commission, entered upon the discharge of his duties."

By which extract, (the response proceeds to say,) it is manifest that on the 1st day of September, 1846, the petitioner "by his *failure, wilful neglect and refusal to reside at the Seat of Government,* and *perform* the duties of Secretary had *abandoned* said office, and said office, in the judgment of the Governor, had become vacant, and was so declared to be by the Executive, in due form of law," and stating the commission to George B. Kinkead and his qualifying thereto and assuming the duties of Secretary, &c., says that the respondent has never declined, but is willing to issue his warrant for petitioner's salary, up to said first day of September, 1846, but has declined and still refuses to issue his warrant in his favor, for any claim for salary accruing after that day, for the reasons aforesaid; and prays the judgment of the Court whether he is bound to issue his warrant as demanded.

At the April term, 1847, (the case having been held under advisement from the preceding term,) this response was adjudged to be insufficient on demurrer, and a peremptory *mandamus* was awarded. From which judgment and award, an appeal to this Court was granted to the Attorney General on his motion, and in pursuance of an act of the Legislature authorizing him to appeal in such cases. The assignment of errors questions: 1st. The jurisdiction of the Court; and, 2d. The propriety of its decision on the demurrer. The numerous questions arising under this general assignment of errors, will be discussed without any further preliminary statement of them.

I. By the third section of an act of 1812, (1 *Stat. Law,* 182–8,) it is expressly made the duty of the Auditor to "issue warrants for the quarterly payment of the salaries of every person entitled thereto, as the same shall come due, on the last days of March, June, September and December annually," and for the portion of a quarter as the case may be. Upon the creation of the office of Second Auditor, this duty was devolved upon that officer. And there is no mode by which a salaried offi-

All officers of government receive their compensation upon the warrant of the Auditor upon the Treasurer. The salary of Secretary of State, $750 yearly, payable quarterly. The *mandamus* is an ap-

cer can regularly draw his salary from the Treasury, but by a warrant from the Second Auditor. By an act of 1825, (2 *Stat. Law,* 1413,) the Secretary of State, who was before a salaried officer, is entitled to a salary of seven hundred and fifty dollars. Neither this nor any other act authorizes the Auditor to make any deduction from the salary of the Secretary on account of absence, neglect of duty or other cause. But so long as he continues in office, he is entitled, under the law, to receive at the end of each quarter, a ratable proportion of his salary, computed alone with reference to time and the fact of his continuance in office. If he has been in office from the beginning to the end of a quarter, he is entitled to a warrant for the quarter's salary, and it is the Auditor's duty to issue it. The writ of *mandamus* commanding the Auditor to issue the warrant in such case, would seem to be an appropriate, as it is obviously a simple and direct remedy for enforcing the right of the Secretary to his salary, by enforcing the legal duty of the Auditor to furnish him with the legal and necessary means of obtaining it.

propriate mode of compelling the issue of the warrant.

The Circuit Courts of this Commonwealth being invested with the jurisdiction and powers of the District Courts which preceded them, and which had been expressly authorized to issue writs of *mandamus,* have undoubtedly the power to issue such writs when appropriate. According to the nature of the writ and the practice in regard to it in England and the United States, it may be directed to an inferior tribunal or to an inferior officer or functionary, to compel the performance of a particular duty. And although it is not so extensively applicable in this State, as it is in England, where the Court of King's Bench, by which alone it is issued, has a general supervisory jurisdiction over the operation of the laws throughout the kingdom, we suppose it must even here be applicable to every case in which an inferior tribunal or officer refuses to perform a merely ministerial act which he or it is bound by law to perform, and of which the refusal defeats or violates the vested right of an individual, recognized and enforcible by law. Whether this remedy may be em-

The *mandamus* in Kentucky, is an appropriate mode of compelling the performance, by an inferior tribunal or officer, of a duty merely ministerial, which is injoined by law.

PAGE, SECOND
AUDITOR,
vs
HARDIN.

ployed for the enforcement of a public duty not affect-
ing an individual right, or for any other purpose than
for the effectuation of individual right, we need not en-
quire.

This writ has
been awarded in
Kentucky by the
Circuits to the
County Courts,
to compel the
performance of
a ministerial du-
ty involving indi-
vidual right.

Writs of *mandamus* have been issued by the Circuit
Courts to the County Courts, in this State, to compel
the performance of a ministerial act essential to the
right of an individual, and when the proceeding has
been reversed by this Court, it has been on the ground
of want of right in the individual, and with the recog-
nition, express or implied, that the remedy was appro-
priate if the right asserted had existed.

It has been a-
warded in Virgi-
nia to compel the
qualification of a
clerk claiming
to have the right
to the office; and
in Kentucky to
compel the Re-
gister to register
a survey, and
compel the Aud-
itor to issue his
warrant on the
Treasurer: *De-
vine* vs *Harvey*,
(7 *Mon.*) *Ken-
dall* vs *U. S. for
Stockton*, (12
*Peters*;) *Mar-
berry* vs *Madi-
son*, (1 *Cranch.*)

In Virginia, the writ has been issued by the superior
to an inferior Court, to compel the admission and quali-
fication of an individual claiming to have been the law-
ful clerk of the inferior Court.

In this State it has been issued to the Register of the
Land Office, to compel the registration of a survey;
and in the case of *Devine* vs *Harvey*, (7 *Monroe*, 439,)
this Court asserted that it was a proper remedy, to com-
pel the Auditor to issue his warrant in favor of a public
creditor. The same is in effect decided by the Supreme
Court of the United States, in the case of *Kendall* vs
*the United States, for Stockton*, (12 *Peters*, 524.) In
this last case, the remedy was sustained, on the ground
that the officer to whom the writ was directed, was
bound to perform the act required; that it was not a
matter of discretion whether he would do it or not,
and that the complaining party had a right to its per-
formance, and an interest in it which was injured by
the refusal of the officer. The case of *Marbury* vs
*Madison*, (1 *Cranch*, 137,) decides that under such cir-
cumstances, the party whose legal right has been with-
held or injured, is entitled to legal redress, and that the
writ of *mandamus*, where there is a tribunal competent
to issue it, is the appropriate and specific remedy. It
is the clear result of all the cases, that where a minis-
terial act which ought to be done is essential to main-
tain or satisfy the legal right of an individual, the *man-
damus* is an appropriate remedy for coercing the act, in
case of refusal to perform it. And it is manifest that

the tribunal which has power to grant or refuse the writ, must have power to decide all questions on which the propriety of granting or refusing it depends. If any of these questions have been conclusively decided by a competent power, that decision must of course be taken as a fixed element in the main inquiry. But the allegation of such a decision by one of the parties, cannot be conclusive upon the other, and can only present the question whether there has been a decision by competent authority; which question, like all others incidentally arising, must be decided by the tribunal which must grant or refuse the *mandamus.*

If there were no question as to the petitioner's continuance in office during the quarter for which he claimed the salary, there would, as we presume, be no question that the refusal of the Auditor to issue the warrant for its payment, would have presented a proper case for a *mandamus* from the Franklin Circuit Court, within whose territorial jurisdiction the office of the Auditor is placed by law, and he himself is to be found. It may indeed be assumed, that if no question had been made as to the petitioner's continuance in office, the warrant for his salary would not have been refused. But this only implies that the warrant would have been issued if there had not, in the opinion of the Auditor, been sufficient cause for refusing it, which must be taken to be implied in every refusal. Is the right of the party then, concluded by the opinion or judgment of the Auditor against it? If so, the Auditor's refusal to issue a warrant, which is the only ground on which a *mandamus* can be awarded, requiring him to issue it, would be always a conclusive reason for not awarding the *mandamus.* And as every tribunal or officer having a prescribed duty to perform in a designated state of circumstances, must, in the first instance, judge as to the existence of the fact or the case on which the duty is to be performed, there is just the same reason for giving conclusive effect to this preliminary judgment of every officer or tribunal as to that of the Auditor; and the *mandamus* would, in effect, be expunged from the remedial code. The same principle carried out would de-

feat every legal remedy for the assertion of a right against the judgment of any officer or tribunal entrusted with the duty in the first instance, of ascertaining and satisfying the right.

The Auditor has no discretion to issue or not to issue his warrant for the salary due to an officer. Every salaried officer, unless the law authorizes some deduction, is entitled absolutely to the warrant for his salary due at the end of a quarter. The Auditor is therefore bound to know, in order that he may properly perform his own duty, whether the applicant is a salaried officer, and the rate of salary to which he is entitled. But his determination against the claim cannot be conclusive, because the right if it exists, is a legal right, founded in the law, and therefore to be ascertained and maintained by the law; whence it follows that there must be some legal remedy above and independent of the Auditor's will or judgment, for the enforcement of the right, and the redress of the wrong sustained by its being withheld. This remedy is, in our system, to be found in the resort, by the ordinary modes, to the judicial power as administered in Courts of justice. This, as between individuals, is the final test of legal right and wrong, and not the less so because in any case the right claimed or the wrong alledged may be of such a character as to bring in qustion the efficacy of official acts done by the functionaries of other departments of the government. Not that the judicial power or the judicial department is superior to the others, or that the depositories of that power are necessarily more enlightened than all others, but because it has been found essential to the preservation of individual rights, and to the regular and equal operation of a free government, that the three great departments of power should be entrusted to different bodies of magistrates, and that one of them should be a judicial department, having for its peculiar province and duty, the administration and exposition of the laws in their application to individuals, and especially in the ascertainment and enforcement of rights, and the repression and redress of wrongs.

If, as is now conceded by all, a judicial tribunal, acting in a case within its appropriate sphere may, and indeed must, under our system, decide upon the constitutionality of an act of the legislative department, when necessarily involved in the determination of the rights before it for adjudication, and if in such case it may upon its own judgment declare the legislative act inoperative and void, as being in violation of the constitution, which is the supreme law, there can be no reasonable ground for denying to it the power and duty of deciding upon the legal validity or invalidity of any act of the executive department, whether done by an inferior or by the supreme executive officer. The executive department and all of its officers are as much bound by the constitution and laws, as the legislative, and have no more power to violate the rights of individuals secured by the laws. The power, obviously judicial, of ascertaining and enforcing the legal rights of individuals, is in effect the power of protecting those rights from violation by the act or authority either of individuals or of the legislative or executive departments; and it necessarily involves the function of deciding in every case properly before it, what are the legal rights of the parties, and how far in point of law, that is under the constitution and laws, those rights have been affected by any and every act relied on for their support or destruction. The application or operation of this power, in determining the character and validity of legislative acts, has been frequent, and is familiar. And we have already referred to cases in which the judicial tribunals have, in furtherance of individual rights, decided upon the rights and duties of inferior officers in the executive department, and enforced the individual rights by *mandamus* against the officer. The cases of *Bruce* vs *Fox*, (1 *Dana* 447;) and of the *Jefferson Justices* vs *Clark*, (1 *Monroe*, 86,) are instances in which the Court in determining the rights of individuals, has investigated the question of executive power, so far as it was involved, and in each instance has decided against the validity of the act of the supreme executive officer, viz: an appointment and commission from the Governor, on

PAGE, SECOND
AUDITOR
vs
HARDIN.

The judiciary must, where individual right is involved, decide upon the legality of an act of the supreme executive power, as of the legislative : *Bruce* vs *Fox*, (1 *Dana*, 447;) *Justices of Jeff.* vs *Clark*, (1 *Monroe*, 86.)

Page, Second
Auditor
vs
Hardin.

which one of the parties relied. Many other cases may be supposed in which a like question as to the constitutional or legal validity of an appointment and commission by the Governor may arise and must be decided. As in a *quo warranto* against an individual exercising an office under such appointment, alledged to be illegal or unauthorized; or an action by an individual claiming an office under one commission, against a person who has acted in it, and received its emoluments under another commission to the same office; or an action for refusing or withholding a right pertaining to an office claimed under a commission; or a defence to an action for an alledged injury attempted to be justified under a commission.

—But when the supreme executive is vested with a discretion, his decision is final. The question whether the discretion is conferred and exists, is a judicial question.

Where, by the constitution or the law, the Governor has a discretionary power, or where on any ground, his act is made conclusive as to all rights involved, it is of course not within the province of a Court to inquire into the propriety or impropriety of the act. Such a power controls all rights which it may affect, and a properly authenticated act done in pursuance of it cannot be questioned, for the reason that there can be no legal right coming in conflict with it. Rights dependent upon a discretionary power, cannot exist in opposition to it; but terminate at its will. The question however, whether there is such a power in a given case, or whether any particular power or act is of the character referred to, is a judicial question, whenever the right in litigation before a judicial tribunal depends upon it and require its decision. If any office be held at the will of the Governor, the appointee could not complain of the violation of any legal right, by the revocation of his appointment, however sudden or groundless. But if the Governor were to attempt to displace any officer at his mere will, he might undoubtedly make the question in a legal contest with a proper party, whether the Governor had such power, and whether his right to the office was terminated. The question of right on his part, and of power on the part of the Governor, would be the same. And as he might unquestionably assert this right by appropriate legal remedy, the question of

power would necessarily be brought within the cognizance of the Court. And so any power claimed or exercised by the Governor, may be brought in question before a judicial tribunal, if it be relied on and material either in opposition to any right asserted by legal remedy, or in support of it.

Such we understand to be the operation of the judicial power and of the law, in the protection of individual legal rights, under a constitutional government. The judiciary pretends to no direct control over the action of the legislature or of the supreme executive. But it may decide upon the validity of the acts of either, affecting private rights. And by the writ of *mandamus* it may coerce a ministerial officer, though of the executive department, to the performance of a legal duty for the effectuation of a legal right. It must decide all questions essential to a determination of the rights of the parties in a judicial proceeding coming properly before it. The present proceeding is, as we have seen, one of that character. There is nothing in the nature of the questions presented in the petition and response, to repel the jurisdiction of the Court, or to remove the case from the sphere of the judicial power. And we proceed to state our conclusions as to such of them as are deemed essential.

II. Although the awarding of a *mandamus* in this case implies that the Auditor has refused to do an act which it was his legal duty to do, it implies no imputation either of improper motive, or of want of reasonable skill and knowledge in the duties of his office. The sole question is as to the legal right and duty. If Hardin was Secretary up to the 30th of September, 1846, with the rights pertaining to that office, he had a legal right to have his salary up to that date, and to have a warrant from the Auditor for its payment, and in view of the law, it was the duty of the Auditor to issue it upon proper application. Upon the statements of the petition, a title to the salary, as demanded, is certainly made out, and unless the response shows that the petitioner was not entitled to it, the legal conclusion is, that the *mandamus* was properly awarded.

The response does not deny, but in effect admits, that Hardin had been the duly appointed Secretary, under a commission which had not expired by its own terms. It does not state that he had ceased to be Secretary on any particular day, or at any time before or on the 30th of September, 1846, but makes an argumentative statement of the extract from the executive journal communicated by the Governor, and of the Auditor's inference from it; and rests his refusal to issue the warrant, not upon the averment that Hardin had been removed, or had resigned, or even abandoned the office, but upon the Governor's declaration and judgment, that he had, by the particular facts referred to, abandoned it, and upon the fact that the Governor had on that declaration and judgment of a vacancy, appointed a successor, who was duly qualified, &c. The substance of the response is, that the Governor had decided the office to be vacant by abandonment, evidenced by the failure, wilful neglect and refusal of Hardin to reside at the Seat of Government and perform the duties of Secretary, and that having caused this decision or judgment to be entered on the executive journal, he had commissioned another. And the Auditor says it is manifest by this entry, &c., that the petitioner had by failure, &c., abandoned said office, and said office, in the judgment of the Governor, had become vacant, &c. &c.

We are not, as already intimated, to decide whether the response contains matter sufficient to excuse the Auditor from any charge of moral delinquency, nor what degree of deference might be paid by him to the opinions and acts of the Governor, nor whether in a case of such delicacy and difficulty, he might not, as matter of prudence and discretion, and on the ground of a doubt as to his duty, and for the purpose of having the question decided by a legal tribunal, have declined issuing the warrant as the least hazardous course to himself. We must say, however, that these grounds of action could not affect the question as to the legal rights of the claimant, or the legal duty of the Auditor; that although the Auditor may, and must derive information from the executive journal or office, of various

*The Auditor is to be governed by the law in his issue of warrants upon the Treasury to those demanding them, not by the Governor.*

facts and executive acts which may determine his duties, those duties are prescribed by law, and must at last be tested by the law, and that for the settlement and payment of demands upon the Treasury, sanctioned by law, he is the agent of the law, and is subject to coersion by the law if he refuse, upon whatever grounds, a warrant legally due and properly demanded. And, if as we consider certain, the judgment and act of the Governor would not in a contest between Hardin and Kinkead, under their conflicting commissions, conclude the question of executive power, on which that of right would depend, no more can they conclude the question of legal right and duty in the present case. The Auditor, though holding an office in the executive department of the government, does not perform duties pertaining to the office of the chief Executive Magistrate, or for which the Governor is responsible. He is not placed under the control of the Governor, nor made responsible to him, but to the law—to the tribunals of the law for the final ascertainment of his duties affecting the rights of other individuals, and to its coersive power for their enforcement.

The issuing of a *mandamus* in such a case as the present is, therefore, not an officious or inconvenient interference of the judiciary between the Governor and his agent, tending to disturb the regular and harmonious operation of that department. But if the right claimed is sustained by the law, it is the interposition of a tribunal appointed by the law, for the ascertainment and enforcement of such rights, by the application of a remedy, essential in a general point of view, to the regular operation of the laws, and rendered necessary in the particular instance, for the effectuation of a right. And although the Secretary is placed under much more intimate relations with the Governor than the Auditor is, still if he has any rights secured by law, and not subject to the will or judgment of the Governor, these, like other individual rights, must be entitled to the aid of the remedial powers of the law, and must be ascertained and enforced as other rights. We recur then to the question whether Hardin's legal right to the salary or

to the office of Secretary, is shown by the response, to have been terminated before or on the 30th of September, 1846.

III. The 24th section of the 3d article of the constitution of Kentucky which relates to the executive department, creates the office of Secretary in the following words: "A Secretary shall be appointed and commissioned during the term for which the Governor shall have been elected, if he so long behave himself well. He shall keep a fair register, and attest all official acts of the Governor, and shall, when required, lay the same and all papers, minutes and vouchers relative thereto, before either house of the General Assembly, and shall perform such other duties as may be enjoined him by law."

*The constitution 24th sec. 3d. article providing for a Secretary.*

Various duties, generally of a clerical or ministerial character, have, from time to time, been imposed upon the Secretary by legislative acts, and the constitution itself designates several specific acts, which in particular contingencies, the Secretary is to perform. The nature of the duties pertaining to the office by the constitution and laws indicates, and public convenience requires, that the person by whom they are to be regularly performed, should be always at hand ready, without unnecessary delay, to attest the official acts of the Governor, and to perform other duties connected with or dependent upon the action of the Governor. Public convenience indeed required that most of these duties should be performed at the Seat of Government. As a means of securing their regular and speedy performance, under the former constitution of the State, an act was passed, (in 1795,) requiring that the Treasurer, Auditor and Secretary, should reside at and keep their offices in Frankfort. The schedule to the present constitution provides that existing laws not inconsistent with that constitution, shall continue as if the constitution had remained unaltered. The 11th section of the 6th article of the present constitution, provides that "all civil officers of the Commonwealth at large, shall reside within the State, and all district, county or town officers within their respective districts," &c. &c., and

shall keep their respective offices at such places as may
be required by law," &c.

We think it entirely clear that so far as residence is
to be regarded as a qualification for receiving or retain-
ing office, the constitutional provision on the subject,
covers the whole ground, and is a denial of power to
the Legislature to impose greater restrictions.   And as
the Secretary is evidently not an officer for the town
of Frankfort, nor for the county of Franklin, but for
the State at large, the Legislature, though competent
to prescribe the place in which his office should be kept,
was not competent to prescribe, as a condition of his
taking or holding the office, the place of his residence.
If this requisition of the act of 1795, evidently intended
as a means of securing the timely and proper discharge
of the duties of the Secretary, derives force from the
power of the Legislature to prescribe duties to the
Secretary in addition to those specifically enjoined by
the constitution, still the required residence can scarce-
ly be regarded as in itself, an official act or duty.   And
although highly conducive, and in a general sense per-
haps requisite to a due performance of the official du-
ties, it is obviously not indispensable.   The Secretary
might reside out of Frankfort and at various distances,
and yet keeping his office in Frankfort, he might per-
form personally, and in due season, every duty pertain-
ing to his official character.   And in such case his fail-
ure to reside in Frankfort, though in disregard of the
legislative requisition, would certainly not be *ipso
facto,* an actual forfeiture of his office, and would hardly
be looked upon as a cause of forfeiture.   The Legis-
lature is doubtless competent to regulate, to some ex-
tent, the manner, and perhaps even the' means of dis-
charging duties of a ministerial character.   Such regu-
lations are, however, in general directory, not going to
the essence of the official act to be done, nor of the
official right to do it.   If the requisition as to the resi-
dence of the officer be, when it cannot be made a quali-
fication or condition of office, at all allowable, it is of
the same nature as the regulations just referred to.   As
a means for the attainment or security of a particular

*Right margin:*

PAGE, SECOND
AUDITOR
*vs*
HARDIN.

The Legislature
cannot, where
the constitution
prescribes the
qualification for
an office, add
others not there-
in prescribed.

end, viz: the due performance of official duty, it cannot be of greater importance than the end itself. As a legislative requisition it cannot be of superior efficacy to the constitutional requisitions prescribing the duties of the officer. And a failure to comply with it cannot constitute a higher offence or incur a more serious penalty, and especially when the Legislature has not denounced any penalty or other consequence, for a failure to reside at Frankfort. If such a failure standing alone, may be regarded as a breach of official duty and good behavior, it is certainly one of minor character when compared with the more serious delinquency of refusing or neglecting to perform those official duties in which either individuals or the public are concerned.

The Legislature have the power to provide by law for the appointment of an Assistant Secretary.

The constitution enjoining certain duties upon the Secretary, seems to contemplate their performance by that officer personally, and not by an agent or deputy. The object of the clause, however, was to designate the duties of the officer, and not the mode of their performance. And although it certainly did not intend to create a sinecure office, yet as the duties imposed are wholly or for the most part, ministerial only, and such as might be performed by any person of moderate intelligence and clerical skill, we should have no doubt that it was competent for the Legislature to allow the Secretary to appoint an assistant for the occasional performance of his official duties, in his name, and upon his responsibility.

By the common law, ministerial officers may generally appoint deputies to act in the name of the principal.

Indeed by the common law, a ministerial officer might generally, appoint a deputy, whose acts in his name, were valid. It may easily be supposed that from the increased business of the office of Secretary, arising from various causes, the assistance of a deputy might become indispensable, and that even if the business did not regularly require it, there might be various casualties which would render it necessary for the convenience of the public, that the official duties of the Secretary should be occasionally performed by another for him. The direct sanction of the Legislature may, however, have been necessary in this case.

But be this as it may, by an act of 1805, the Secretary is authorized, with the assent of the Governor, to employ an assistant, who, in case of the sickness or necessary absence of the Secretary, may do the business in his name, &c. By the allowance of this act and by recognition in other subsequent acts, the Assistant Secretary has become a regular appendage to the office of the Secretary, and is entitled to a salary as such. And without any acquaintance with the actual course of business in the office, it might be assumed as a result growing out of the very nature of the case, that however this privilege of the Secretary's acting by his assistant may have been intended to be, or may actually have been at first, restricted to cases of apparent necessity, it would become, and probably has become the ordinary practice in the performance of many of the ordinary duties of the office, and especially of those expressly named in the constitution, viz: the registering and attesting of the official acts of the Governor.

The word "necessary," used in the statute, is itself of indefinite and malleable signification, and has been decided in the construction of other instruments, of the highest character, not always to mean absolutely indispensable. So far as the authority of the assistant was concerned or the validity of his acts, no question could be made as to the causes of the Secretary's absence. Nor indeed do we perceive how the official acts, done in his name by the assistant, could be questioned, though done in his presence and under his direction. We do not judicially know what may be the modes of official communication or intercourse between the Governor and Secretary; how the official acts of the Governor are communicated to the Secretary for registration and attestation, and how they are then disposed of. We presume if an instrument executed by the Governor, should come again under his view, with the attestation made by the assistant, in the name of the Secretary, he would not deem it necessary to institute an enquiry either into the fact or the causes of the Secretary's absence; and that he would not arrest an attestation of that kind, if made in his presence, until such

enquiry could be prosecuted. We are satisfied that no judicial tribunal would entertain an impeachment of such an attestation, on the ground either that the Secretary was not absent at the time, or that his absence was not necessary. And we conclude upon this point, that even if there be some official acts pertaining to the office which must be done by the Secretary himself, his ordinary duties may be performed with full effect by his assistant, and that his continued personal presence in his office, or at the Seat of Government, is not absolutely essential to the regular progress of the business of his office. The act authorizing the performance of the business by another in case of his necessary absence, refers not to a public necessity requiring his absence, but to a private necessity which, in view of his own condition or affairs, may demand, or in the practical sense of the statute, justify or excuse it. The act dispenses with his continual presence for the discharge of his official duties by providing for their discharge in case of his necessary absence. It furnishes no criterion for determining the nature or degree of the necessity which may excuse his absence, or for determining the length of absence which may be excusable.

The Secretary is to be the judge in the first instance, of the necessity of his absence from his office, subject to the decision and judgment of that tribunal which is authorized to pronounce upon his official conduct.

But holding him still responsible for the proper performance of the duties of his office, it leaves the question of his personal attendance upon those duties and of his absence from the discharge of them, to be decided in the first instance, by his own sense of public duty and of private exigency, but subject further to such penalties or means of coercion, as the laws may provide in case of neglect of duty, and finally to the judgment of that tribunal which, by the constitution and laws, may rightfully pronounce sentence upon his official conduct.

But however the practical operation of the statute may have tended to sanction the absence of the Secretary on occasions rather of personal convenience than necessity, and to relax the sense of duty on the subject, a tendency which has doubtless been aided by the practice of successive Governors in making their appointments to this ministerial and clerical office, from among

the most eminent men in the State, it must be assumed that the statute did not, any more than the constitution, intend to make the office a sinecure for the benefit of the Secretary, or·to free him from the obligation'of personal attention and supervision, while he should enjoy the name and salary of the office. On the contrary, a total or even habitual and general disregard of this obligation, evidenced by continued or general absence from the office and its duties, without such cause as under all the circumstances, might be deemed by the appropriate tribunal, a sufficient excuse or justification, would doubtless be a breach of official duty and good behavior authorizing a removal from the office, although its active duties might be regularly discharged by an assistant, during the entire period, without other injury to the public than such as necessarily arises from the fact and example of a public officer's retaining the name and emoluments of office, without performing its duties. But as the laws do not provide for any deduction from the salary of this officer on account of absence or neglect of duty, but entitle him to the salary as long as he remains in office, the question here is, not whether he deserved to be deprived of the office or its salary, of which we have not either the power or means of judging, but whether upon the facts shown in the case, he was, in point of law, out of office, and consequently without legel right to the salary pertaining to it.

IV. The response is understood as showing that the Governor had declared and adjudged the petitioner to be out of office by abandonment of it as evidenced by his failure, wilful neglect and refusal to reside at the Seat of Government and perform its duties, and that the office being thus declared vacant, a successor had been appointed. Acknowledging the respect which we sincerely feel for the opinions and character of the Governor, whose acts are now brought in question, as well as that which is due from this department to the official acts of every Governor, we are bound to enquire whether the vacancy assumed either actually existed by virtue of the facts alledged in the executive declaration and judgment, or was produced either by that act or by

the act of appointing a successor to fill it. Neither the declaration nor the response avers as a fact or as a naked conclusion from facts not alledged, that the petitioner had abandoned the office, but the abandonment is a conclusion or inference from the alledged failure, wilful neglect and refusal to reside, &c., and perform the duties of his office. And it is to be observed, that it does not, in any manner, appear that the duties of the office were not, in fact, performed in the name and under the authority of the petitioner, notwithstanding the failure, neglect and refusal alledged; nor does it appear during what length of time or under what circumstances this failure, &c. occurred, nor in what particular, except with respect to residence. Then the petitioner avers that by himself and by his assistant, acting in the name of the Secretary, according to law, all the duties of the office have been faithfully performed. This not being denied nor the contrary asserted, either by the response, which undertakes to show the legal termination of an existing right, or by the executive declaration intended to show the grounds of the executive judgment and act, must, upon the demurrer, be assumed as true. And the indefinite allegation of failure, neglect and refusal to reside at Frankfort and perform the duties of Secretary, must be qualified by the fact, that occasionally by himself, and continually by himself or authorized deputy, he had performed all the duties of the office. Do the facts then authorize the conclusion that he had abandoned the office or that in point of law, it was vacant by abandonment?

Conceding, without deciding, that an office may be vacated by abandonment, and that there may be such evidence of it as to authorize the Governor to consider the office vacant, and to fill it by a new appointment, still unless the Governor can, by his own will or judgment, put an end to the rights of the officer or to his continuance in the office, this concession would have no plausible support in reason or law, except upon the ground that there should be unequivocal evidence of the voluntary rejection or resignation of the office. A right may be forfeited or lost by neglect or misconduct,

No partial neglect or non user of an office, can be regarded as sufficient evidence of abandonment, unless it be not only total and complete but of such continuance as to preclude all future question of the fact.

though the party has continually asserted or claimed it. Its vacation by abandonment, implies a voluntary and intentional rejection, disclaimer or surrender of it by the party to whom it pertains. An office may be forfeited by non user or by official misconduct or misbehavior. A partial neglect to perform certain duties of an office, may amount to misbehavior, and as such, be cause of forfeiture. But no partial neglect or non user can, in itself, be sufficient evidence of abandonment—which implies a mental renunciation of the office. And if abandonment may be inferred conclusively from non user or neglect of duties, so as to amount, in itself, to an absolute vacation without express renunciation of the office once lawfully held by the party, it can only be when the nonuser or neglect is not only total or complete, but of such continuance, or under circumstances so clearly indicating absolute relinquishment, as to preclude all future question of the facts.

But we do not find that abandonment is one of the regular and recognized modes of vacating an office, or that it has acquired either by legal or common usage, any defined signification in reference to that subject. We understand, however, the intentional or voluntary relinquishment of the particular object to be essentially involved in the abandonment of that object, and that an office cannot be abandoned without the intention, actual or imputed, of abandoning it. An office may be voluntarily relinquished by removal from the State, county, or other district to which the officers residence is restricted by the law of his office; or by the acceptance of an incompatible office; or by the relinquishment of any express qualification; or the assumption of any absolute disqualification, if there be any not already named, or by resignation. These acts are generally of a character which renders them susceptible of direct and conclusive proof, and as to most of them, the evidence by which the Governor is to be informed of the vacancy, is defined by usage or otherwise well understood. If there be still another mode of voluntary relinquishment by abandonment, which is to place the office at the disposal of the Governor as being vacant,

PAGE, SECOND AUDITOR vs HARDIN.

An office may be abandoned by removal from the State, county or district to which the officer is restricted by the law of his office. By accepting an office incompatible with that which he held—By relinquishing any express qualification—By the assumption of any absolute disqualification, or by resignation—The allegations in the case do not make out a case of abandonment.

it is essential as a security to all officers, who though commissioned by the Governor, do not hold at his will or judgment, and as a means of avoiding the confusion and uncertainty which must arise between claimants of the same office under different commissions, that the voluntary relinquishment by abandonment, which is to be *ipso facto* a vacation of the office, should be equally well defined as other recognized modes of voluntary relinquishment, and especially that it should not be confounded with nonuser, neglect of duty, or other official misconduct or abuse; which, although constituting just and legal grounds of forfeiture, do not produce a vacation of the office, but upon conviction and judgment of amotion, implying not only accusation and condemnation, but the opportunity of defence and proof and trial.

If, as we have assumed, Hardin, though he failed to reside at Frankfort and perform the duties of his office, performed those duties occasionally in person, and generally by authorized deputy, we are satisfied, that whatever personal delinquency might be involved in his failure, &c., to reside at Frankfort and perform the duties of Secretary, (if this last be a separate allegation,) he cannot be regarded as having abandoned the office. And even if we exclude the assumption as to his performance of the duties occasionally in person, still it is not stated, and cannot be assumed that they were wholly unperformed, or that their performance was not provided for by him. And whatever might have been the effect of a total and continued failure, by which the business remained wholly undone, we are of opinion that the general allegation of failure, &c., to reside at the Seat of Government, and perform the duties of Secretary, does not make out a case of abandonment in the only sense in which it would vacate an office, because it does not establish as an inference of fact or law, a voluntary or actual relinquishment of it.

V. The Governor, however, decided that by reason of the alledged failure, &c., Hardin had abandoned the office, and it had become vacant. The response relies upon this decision as conclusive of the question, and

it becomes our duty to inquire whether it is conclusive as to the rights of the officer to whom it relates.

The constitution, (art. 3, sec. 10,) confers upon the Governor the express power "to fill up vacancies that may happen during the recess of the Senate, by granting commissions which shall expire at the end of their next session." But this clause certainly gives no power to make a vacancy by declaration or judgment that one exists, or by granting a commission to fill one assumed to exist. There must be a vacancy before the power or duty of filling it arises. And although having the power to act in a particular state of case, the Governor must decide for the determination of his own action, whether and when the designated state of case exists, still the constitutional power of granting the commission, and therefore, the legal validity of the act, is made to rest upon the fact of an actual vacancy, and not upon his opinion or judgment of the fact. To say that his opinion or judgment of the existence of a vacancy, is to be the sole and conclusive test of the fact, is to make him the sole and conclusive judge of all the acts and causes which may produce a vacancy, is to change a contingent into an absolute power; and must ultimately result in converting the power to fill a vacancy already existing, into the power of creating a vacancy to be filled. Such a power, which would place within the uncontrolled discretion of the Governor, not merely the selection of the person to fill an office actually vacant, but the displacing of an officer under the form of filling a vacancy, is not conferred by the clause in question, and is moreover inconsistent with those clauses which fix the tenure of office during good behavior, and which therefore give to the officer the right to hold according to that tenure. If the Governor may determine conclusively upon the existence of a vacancy, there is no security for this right, but by imputing to him an infalibility which belongs to no earthly officer or tribunal—which the constitution imputes to none, and which cannot be regarded as the appointed guaranty of constitutional or legal rights.

*Margin notes:*

PAGE, SECOND AUDITOR *vs* HARDIN.

The constitution (art. 3, sec. 10,) confers upon the Governor power to fill vacancies that may happen during the recess of the Senate, by granting commissions, &c.—but it gives no power to make a vacancy by a declaration that one exists, and granting a commission to fill such supposed vacancy.

The decision of the governor that a vacancy exists, is not conclusive upon the rights of others.

PAGE, SECOND
AUDITOR
vs
HARDIN.

If further speculation be allowable on this point, it may be observed, that in deciding that there is a vacancy, the Governor decides in favor of his own power to make a new appointment; that such a decision may be favored by the most earnest conviction that the public good will be advanced by it, and that if not subject to be misled by these considerations, he is still liable, where the question of vacancy is not determined by matter of record, but depends upon evidence or inference, to be imposed on with regard to the facts or mistaken as to the law involved in the question. Other tribunals, it is admitted, are also liable to err. But in the ordinary tribunals for the ascertainment of legal rights, the laws have provided important barriers against error, by the established rules of proceeding and of trial and judgment. And the privilege of every citizen to resort to these rules, constitutes a most valuable safeguard to his rights. In the decision of the question of vacancy by the Governor, his investigation is directed by his own discretion, and there is no prescribed mode of trial which may insure the attainment of truth. As the decision may be made in the absence of the party concerned and without notice, so it may be founded upon false or forged testimonies, or upon inferences easily disproved.

In the cases of *Bruce* vs *Fox,* and the *Jefferson Justices* vs *Clark, supra,* this Court decided against the decision and act of the Governor, the very questions of the existence of a vacancy and of his right to make an appointment, as matter of law upon undisputed facts. And if the decision of the Governor may be thus questioned on grounds of mere law, there must be an equal right to question it on the ground of fact. To deny the right of re-trying such a question on both the law and the fact, is to deny to the right of an officer the usual protection of the laws, and to submit it to the discretion of the executive.

It is true, the Governor may in this case have personal knowledge of the facts alledged, as to the failure, neglect, refusal, &c. of the Secretary. But with regard to the causes and motives, and other circumstances

which might be important, not only on the question of forfeiture, but on the question of abandonment, he might not have the same means of knowledge, and there is no allegation on these points, except in the charge of wilful neglect. If there had been a direct statement by the Governor, that Hardin had abandoned the office whereby it had become vacant, the sole question in the demurrer might have been whether the office could be vacated by abandonment without the ordinary evidence of resignation or rejection. But the abandonment not being alledged directly, but merely as inference, it is sufficient to say, as we have done, that the facts do not make out a case of actual or legal abandonment, and therefore do not show that the office was vacant by abandonment.

Unless, therefore, the Secretary holds his office at the will or pleasure of the Governor, which is not suggested by any one, and is plainly contradicted by the terms of its creation by the constitution; or unless under the constitution, though holding his office during the term for which the Governor is elected, if he so long behave himself well, he is removable by the Governor for cause, that is, on his judgment of misbehaviour, we are satisfied that the office was not vacant on the 1st of September, 1846, by abandonment, and there being no allegation that it was vacated afterwards, it would follow that Hardin was still Secretary up to the end of the quarter, and was entitled to his salary.

VI. The entry in the executive journal, does not necessarily import a judgment of removal for the alledged breaches of duty by the Secretary, but rather a judgment that the office had become vacant by abandonment. But as the expression, after stating the abandonment, is that in the judgment of the Governor, said office has become vacant for the causes aforesaid, it may be that the office was adjudged or pronounced to be vacant for, or on account of the alledged breaches of duty, including the abandonment. And if the Governor has the power of removing the Secretary, the judgment that the office was vacant for the causes alledged, should perhaps be regarded as a judgment of amotion. It is

The Secretary is appointed and commissioned for the term for which the Governor is elected, "if he shall so long behave himself well," being removable for breach of good behavior the conviction for misbehavior must precede his removal.

The conviction of misbehavior in office in our government, implies a right to notice, defence and proof on the part of the officer, and is a judicial question. The trial of an impeachment is a judicial trial not a branch of executive power.

proper, therefore, to inquire briefly whether such a power belongs to the Governor.

The constitution, in the clause creating the office of Secretary, places its continuance during the term of the Governor, expressly on the tenure of good behaviour. His office terminates of course, with the term for which the Governor was elected. But during that term he is removable only for breach of the condition of good behavior. The particular mode of expressing the condition in that clause, "if he shall so long behave himself well," is attributable to the peculiar structure of the sentence, in which the longest term of the office had been previously expressed and the word "during" had been already introduced. The condition is expressed in the same language in creating the office of Sheriff: (art. 3, sec. 31;) and is the same as that expressed in relation to other offices, by the phrase "during good behavior," which is in fact, used in the commission exhibited in the present case.

The Secretary being removable for breach of good behavior only, the ascertainment of the breach must precede the removal. In other words, the officer must be convicted of misbehavior in office. And we shall not argue to prove that in a government of laws, a conviction whereby an individual may be deprived of valuable rights and interests, and may moreover be seriously affected in his good fame and standing, implies a charge and trial and judgment, with the opportunity of defence and proof. The law too, prescribes the duties and tenure of the office, and thus furnishes a rule for the decision of the question involved. Such a proceeding for the ascertainment of fact and law, involving legal right, and resulting in a decision which may terminate the right, is essentially judicial, and has been so considered here and elsewhere. By the common law, the forfeiture of an office held by patent or commission, was enforced by *scire facias* and the judgment of a Court. The trial of an impeachment is universally regarded as a judicial function, and the Senate, setting for the purpose, as being a judicial body. Similar proceedings (for the removal of officers,) in the County or other

Courts, are held to be judicial. And we do not doubt that every proceeding for the removal of an officer for cause, that is for official misbehavior, is essentially an exercise of the judicial power of the Commonwealth, and would, therefore, refer itself to the judicial department of the Government, if not otherwise disposed of by the constitution or the laws.

<div style="float:right; width:30%;">
PAGE, SECOND
AUDITOR
*vs*
HARDIN.
</div>

But the constitution provides for the trial of impeachments by the Senate, and declares that all civil officers shall be liable to impeachment for any misdemeanor in office, and to judgment of removal and disqualification: Art. 5, Sec. 2 and 3. It makes the Judges and Justices of the Peace, moreover, liable to removal for any reasonable cause, not being sufficient ground of impeachment, upon address to the Governor by two thirds of each house of the General Assembly: (Art. 4, Sec. 3;) and it provides that clerks of Courts shall be removable for breach of good behavior, by the Court of Appeals only, who shall be judges of the fact as well as the law: (Art. 4, Sec. 10.) And in each of the cases the concurrence of two thirds of the triers is required.

<div style="float:right; width:30%;">
All civil officers are, by the constitution, to be impeached before the Senate for misbehavior in office: (art. 5, sec. 2 & 3:) or by address to the Governor by two thirds of both branches of the Legislature, except clerks of Courts. The Secretary is subject only to removal as other civil officers in general.
</div>

These clauses laying down the general rule and the exceptions, seem to provide for the whole subject of removal from office for breach of good behavior, and designating special modes and tribunals for the performance of this function, would seem to exclude any other, so far at least, as respects the officers who, by the constitution itself, hold during good behavior. And it might well be supposed that if it had been intended that the office of Secretary should be held subject to any different mode of proceeding by a different tribunal or officer, such intention would have been expressed as in the case of Judges and Clerks. If it be conceded that the constitution is not to be considered as prescribing exclusive modes and tribunals for the removal of officers, still the function of trial and judgment is essentially judicial, and the function of prescribing the modes of proceeding and the cases to which they shall apply, is legislative. And it would seem, therefore, that any remaining power on the subject, should result rather to the legislative and judicial departments, than to the ex-

ecutive, except so far as the Legislature might refer the case of any particular officer to the action and judgment of the Governor, or to some other officer or tribunal. Even under this view, there should, in the absence of legislation, be a strong and evident necessity arising on the face of the constitution itself, to authorize the executive to exercise the power of trial, judgment and removal as to officers holding under the constitution by the tenure of good behavior, and therefore, removable only for breach of that condition. A consideration of the utmost gravity weighing powerfully against the inference of any resulting power in the Governor, to remove upon his own judgment of the officer's misbehavior, and indeed against the existence of the power of removing any constitutional officer holding by the tenure of good behavior, except in the modes prescribed by the constitution itself, is that the obvious and only reason for placing all officers upon that tenure, is that every officer might be secure in the independent discharge of the duties of his office, secure in the certainty that he could not be displaced except for breach of good behavior, or in case of the Judges and Justices, for some cause clearly expressed and deemed sufficient by the prescribed tribunal; and secure in the confidence that he could only be removed upon conviction, implying proof, trial and judgment, and in a proceeding regulated by law or guarded by its publicity and by established forms and usages. These guaranties of official independence and security, the constitution provides by the modes and tribunals which it establishes for the removal of officers, and especially by the requisition that two thirds of the members of the appointed tribunal shall concur in the sentence of removal. But if the Governor may remove an officer upon his own judgment of official delinquency, these guaranties are wholly lost. Free from any regulation of the law or the constitution, he may decide upon such information and by such modes of enquiry as are deemed satisfactory to himself, and the officer may be convicted of misdemeanor and deprived of office without the benefit of those forms of trial and principles of evidence and judg-

ment, or even that publicity which constitutes the real security of individual rights.. There is too much reason to believe that such a power in the executive, to be exercised without legal guard or regulation, and subject only to his own general responsibility, would degenerate into the power of removal at will, or on grounds of expediency. And that the constitutional tenure of good behavior would be reduced virtually, to a tenure at the discretion of the executive.

A power, the obvious and necessary tendency of which is thus subversive of the fundamental principles of official tenure and responsibility, clearly established by the constitution, must be regarded as inconsistent with that instrument, and cannot be sustained upon any mere inference as to the extent of the executive power granted to the Governor, nor upon any idea of convenience or fitness, however developed or confirmed by experience. If we go out of the constitution and laws for ascertaining the executive power, it would be difficult to find its limits. It is in our government just what the constitution and laws have made it. It is not the power of using all means which may be deemed expedient for ensuring a due execution of the laws, but the power of doing such acts and using such means at the discretion of the officer, as the constitution and laws have placed in his hands for securing the due execution of the laws and the regular operation of the government. The power of nominating, and with the consent of the Senate, of appointing to office, is among these means, but whatever might be the inference as to the power of removal, if it were left to inference, (as to which we need not enquire,) that power which we may presume would have been expressly granted to the executive, if deemed requisite for the performance of his duties, and consistent with the general good, has been expressly confided to other hands.

The Governor is responsible for the selection of competent and faithful officers.. But he is under no further responsibility for the faithful discharge of their duties but as he may be authorized by the constitution or laws to direct and control them.. The duties of public

officers, and especially of the Secretary, are prescribed by the laws, and to be performed by the officer under his responsibility to the laws. Even the duty of Secretary, in attesting and registering the official acts of the Governor, though a consequence of those acts, and in that sense dependent upon them, is not otherwise dependent on the will of the Governor. He is not to perform this duty because the Governor wills him to do it, but because the constitution and the law require it. The Governor acts at his own discretion, but the Secretary attests and registers the act by command of the law. Nor do we suppose that the legal validity of the Governor's acts depends upon the performance of these duties by the lawful Secretary or his regularly appointed assistant. And if it be conceded that the relation of the Secretary to the Governor as the recorder and attester of his acts, would render it highly convenient that the Governor, having full opportunity of knowing whether these and other duties of the Secretary are performed with the requisite diligence and skill, should have the power of removing him for failure or defect in these or other particulars; and if it were further conceded that such a power, or even the power of removal at will, would not be inconsistent with the object of placing such an officer near the Governor, as evidenced by the requisition that he shall communicate his register, &c. to the Legislature when required, (as to which we need not decide,) still the mere inference, founded on notions of convenience and fitness, must, as already shown, yield to the higher principles of the constitution. And we only add, as an illustration of the importance attached to these principles in reference to an analogous case, that so far is the constitution from regarding the proximity of the superior and inferior officer in the discharge of those duties, or the relation of the latter as the register of the acts of the former, as a reason for subjecting him to removal by the superior, on the ground of convenience or of knowledge, that it expressly provides for the removal of clerks of Courts by one tribunal alone, thus freeing them, except in the single case of the clerk of the Court of Appeals, from the

danger of removal, under the influence of resentment, distaste, or dissatisfaction, or other feelings which might arise between officers placed in such close proximity in the discharge of their respective duties. There could scarcely be a stronger proof of the importance attached to the principle of securing the tenure of office, as fixed in the constitution, by a fair and impartial trial of the officer before he can be removed for breach of good behavior.

Whether a higher sense of official responsibility, and a more exact discharge of official duties, might not be insured by the establishment of a different tenure of office, or of different modes or tribunals for the removal of officers, is not a question for us to decide. Whatever defects experience may have pointed out in these respects, is subject to the corrective power of the people in convention, and must be left to their judgment and will.

We have inquired into the provisions and principles of the constitution as it is. And, according to the best results of our investigation and judgment, the Secretary is not removable either at the pleasure of the Governor, or on his judgment for a misdemeanor or misbehavior in office. The Governor may fill an existing vacancy, but cannot, in our opinion, in any manner create one in an office held on the tenure of good behavior; nor conclude the officer by his judgment or decision as to the existence of a vacancy. And being also of opinion, as already shown, that upon the facts appearing in this case, there was no vacancy in the office of Secretary, when the Governor, on the grounds stated in the executive journal, proceeded on the 1st of September, 1846, to declare the office vacant, and commission a successor, we conclude that the petitioner was the legal Secretary up to the end of that quarter, and as such, was entitled to the quarter's salary, and to the warrant for its payment.

*The Secretary is not subject to removal from office at the will of the Governor, or on his judgment for a misdemeanor or misbehavior in office. The Governor may fill, but cannot create vacancies in offices held by the tenure of good behavior.— From the facts appearing, there was no vacancy in this case.*

Wherefore, the judgment awarding the peremptory *mandamus* against the Second Auditor, is affirmed.

*Cates, Attorney General,* for the Commonwealth; *J. & W. L. Harlan,* for appellee.