## City of Williamsburg v. Weesner, et al.

(Decided May 20, 1915.)

Appeal from Whitley Circuit Court.

1. Municipal Corporations—Council—Failure to Qualify—Officers.— Where three members elect of a city council wilfully and negli-

gently failed and refused for ten months to qualify or serve as
such councilmen, thereby preventing a quorum and depriving the
city of any administration of its affairs, they, by such conduct,
forfeited their offices as councilmen.

2.  Municipal Corporations—Council—Failure to Qualify.—Under such
circumstances the city has a right to bring an action in equity to
have their offices declared vacant, and the mayor, being the chief
executive of the city, has a right to start and prosecute the pro-
ceedings in the city's name and behalf.

3.  Municipal Corporations—Council—Failure to Qualify.—Where the
members of a city council have abandoned and forfeited their
offices, and that body is left without a quorum, and the machinery
of the city government is brought to a standstill, and the city is
without power to start it again so that it may perform the duties
to the public which it has assumed, as well as those imposed by
law, and it is apparent there is no adequate remedy at law, a
court of equity will not withhold its aid.

TYE, SILER & GATLIFF and H. C. GILLIS for appellant.

W. R. HENRY and STEPHENS & STEELY for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This action was instituted in equity by the city of
Williamsburg, seeking to have an adjudication that each
of the appellees, Weesner, Mount and Bradley, had, by.
their conduct and declarations, abandoned and forfeited
his office as a member of the city council. The lower
court sustained special and general demurrers to the
petition, and the city appeals. The petition alleges that
by act of the General Assembly it is a municipal cor-
poration of the fifth class, and as such has power to sue
and be sued. It is then alleged that at the municipal elec-
tion in November, 1913, a mayor, and a city council, con-
sisting of six members, were duly elected for the term of
two years from the first Monday in January, 1914, and
that defendants were three of the councilmen so elected;
that thereupon it became the duty of the defendants, and
each of them, as members-elect to meet on the first Mon-
day in January, 1914, and take the oath of office, and
as such members to attend the regular meetings of the
city council once in each month thereafter (Section 3633,
Kentucky Statutes); that, by ordinance theretofore
adopted, the second Monday in each month and Nelson
Hall were the time and place for such meetings; that
each of the defendants had failed to meet at the place
named, with the other members, on the first Monday in

January and qualify, and had neglected and refused to attend any meeting of the city council since his election, and had further failed and neglected to perform any duty of his office; that each has publicly declared his intention not to meet with the mayor and the other members of the council, or to perform any duty as a member of the council; that the failure, neglect, and refusal of the defendants has been at all times voluntary and intentional on their part, ''and such non-user of their office and official conduct and misbehavior by them has been of such continuance and under such circumstances as to clearly indicate an absolute relinquishment, abandonment, and forfeiture of their said office; that by reason of all of which each of said defendants has abandoned and forfeited his office as a member of the city council for this plaintiff, and is now estopped from hereafter asserting any claim to such office.'' The petition was signed by attorneys for the plaintiff—not city officials. It was subscribed and sworn to by the mayor and was filed on the 3rd day of November, 1914. It thus appears that for ten months the city was without any effective administration and with no prospect of relief. On the first Monday in January, 1914, when the terms of the old councilmen expired, likewise expired the terms of the city marshal, attorney, clerk, treasurer, assessor, and street overseer, and such other officers as were appointed by the old council. London v. City of Franklin, 118 Ky., 105. The mayor and the other three councilmen qualified and attended the meetings prescribed by law, but a quorum is necessary for the transaction of business and the election of officers. As many as four members of the council must attend to make a quorum. The mayor cannot be counted for that purpose, nor can he vote except in case of a tie. Bybee v. Smith, 22 Ky. L. R., 1684, 61 S. W., 15; City of Somerset v. Smith, 105 Ky., 678, 20 Ky. L. R., 1488, 49 S. W., 456; Sugars v. Hamilton, 29 Ky. L. R., 127, 92 S. W., 564.

Under these circumstances the city has no means for levying or collecting taxes, there are no police officials to enforce order, and no one to look after the streets, sidewalks and other public property or sanitary conditions. If the streets need repair, the city is without officials to attend to it. There is danger of injury to persons and property by reason of the failure of the municipality to keep in proper condition the streets and

other property which the public has a right to use, and the city stands helpless in the face of these dangers and threatened liabilities.

It must be said, however, that there is reason to believe that the city is suffering from the lesser of two evils. This belief is justified by the excuse which appellees in their brief offer for their refusal to attend meetings of the council. They say they "felt like they were entitled to some consideration in the appointment of city officers," and that the other councilmen and mayor would not concede this. Confessedly, then, it was for lack of consideration or inadequate consideration that they refused to serve. That being the motive behind their office-seeking, it follows that, embarrassing as is the city's predicament because of their failure to serve, the city would probably suffer more if they attempted to serve. But the fact that the city suffers less than it would otherwise does not palliate the wrong of these offending members. The city is entitled to relief from the present danger—in that way it makes sure that greater harm will not befall it.

Where the members of a city council have abandoned and forfeited their office, and that body is left without a quorum, and the machinery of the city government is brought to a standstill, and the city is without power to start it again so that it may perform the duties to the public which it has assumed, as well as those imposed by law, and it is apparent there is no adequate remedy at law, a court of equity will not withhold its aid.

"Equity will not suffer a wrong to be without a remedy. This maxim includes the whole theory of equity jurisdiction, that it affords relief wherever a right exists and no adequate remedy at law is available." 16 Cyc., 133.

Taking the statements of the petition as true, it appears that appellees have forfeited and abandoned their offices. The facts set up are sufficient to constitute abandonment.

In 29 Cyc., 1404, it is said:

"Office may also be terminated by abandonment. Abandonment means failure to perform the duties of the office. * * * The determination of the question whether an officer has abandoned his office is dependent upon his overt acts rather than upon his declared intentions. * * * It need not be determined judicially

that an office has been abandoned in order that in a collateral proceeding the office be deemed to have been abandoned; and in·subsequent proceedings, either to regain possession of the office or otherwise, one who has abandoned an office is estopped from asserting a claim to such office.''

In Mechem on Public Officers, Chapt. V., Secs. 432-435, the following rules are stated:

''An office may also become vacant by its abandonment by the officer. Such an abandonment may be evidenced by a variety of acts and events, and, while the classification may not be the best possible, there will, for convenience sake, be treated under this head the vacation or abandonment of the office:    ·

''I.   By refusing or neglecting to qualify.
''II.   By refusing or neglecting to perform the duties.
''III.   By removing from the district.
''IV.   By engaging in rebellion.
''V.   By death.

''Sec. 434.   But the continued and absolute refusal or neglect to qualify at all and to enter upon the discharge of his duties, must operate so far as the delinquent himself is concerned, in vacating his title to the office.   *   *   *''

''Sec. 435.   Public offices are held upon the implied condition that the officer will diligently and faithfully execute the duties belonging to them, and while a temporary or accidental failure to perform them in a single instance or during a short period will not operate as an abandonment, yet if the officer refuses or neglects to exercise the functions of the office for so long a period as to reasonably warrant the presumption that he does not desire or intend to perform the duties of the office, he will be held to have abandoned it, not only where his refusal to perform was wilful, but also where, while he did not intend to vacate the office, it was because he in good faith but mistakenly supposed he had no right to hold it.''

The law as stated by these text writers is recognized in Kentucky. In Page v. Hardin, 8 B. Mon., 666, this court conceded ''that an office may be vacated by abandonment.''

In Beard v. Smith, 6 T. B. Mon., 444, in defining forfeiture the court said:

"Bacon, in his abridgement, title Forfeiture, defines it, 'the omission or neglect of a duty which the party binds himself to perform, or to the performance of which he is enjoined by the law, is upon the breach or neglect thereof, called a forfeiture; that is, the advantages accruing from the performance of the thing, are by his omission defeated and determined.'

"This definition included forfeiture of conditions, obligations, offices and estates."

In the following cases this court recognized the law to be that an office may be forfeited and vacated by abandonment, although it was held that a non-occupation for one day merely was not sufficient: Taylor v. Johnson, 148 Ky., 649; Lewin v. Ft. Mitchell, 148 Ky., 816; Jewett v. Matteson, 148 Ky., 820.

The principles announced in the case of City of Somerset v. Somerset Banking Company, 109 Ky., 549, are not in conflict with the authorities above cited. In the Somerset case the question was over the validity of a tax levy made at a meeting of the city council without a quorum. All of the elected councilmen had qualified and entered upon the discharge of their duties as required by law, but only three of them attended the subsequent meetings. In June following the mayor and the three members of the council, who had continued to meet in regular session, adopted a resolution declaring vacant the seat of one of the appellees because of his failure to attend the meetings during the four months preceding. Crawford was elected in his place. At the next meeting, with Crawford present, the seats of the other two absentees were declared vacant and filled in like manner. By the council, as thus composed, on August 22, the tax levy in question was made. The court held that the mayor and three councilmen did not constitute a quorum, and, therefore, they had no power to declare a seat vacant or elect a new member, and that the tax levy subsequently made was invalid because there was no quorum. Remarks in the opinion to the effect that the expelled members were entitled to their seats, and that the newly elected member had no right to the office because there was no vacancy to fill, were used in connection with the lack of power of the council to declare or fill a vacancy or transact other business in the absence of a quorum. In other words, it was held that the places of the absentees were not made vacant by lawful action

of the city council. There was no question before the court as to whether the conduct of the absentees had been such as to amount to a forfeiture or abandonment of their office, nor whether a legally constituted council with a quorum present had a right to so declare and proceed to fill the vacancy. The court was simply dealing with the case of the council when no quorum was present. Primarily, it is the duty of the city council to judge of the qualifications and election of its members and to fill vacancies. Secs. 3622 and 3635, Kentucky Statutes. But no question of qualification or election is involved here. It is conceded that appellees were · eligible, and duly elected. And no question is raised in this case, and there was none in the Somerset case, as to the power of a legally constituted city council or of the court to remove anyone from office. The question is whether the appellees have removed themselves from office by refusing to qualify and perform the duties of the office, and whether a court of equity can take cognizance of this situation and grant relief where the law affords to the city no adequate remedy. Under the facts alleged—that is, in the absence of a quorum—it is clear that the Williamsburg City Council is without power to determine that a vacancy exists. But there can be no question as to the power of a court of equity to inquire into the facts and decide whether the defendants have or have not forfeited their offices.

Under the circumstances of this case, and with the facts established, as plead, a court of equity should so declare, so that the vacancies may be filled and the city government proceed in an orderly manner.

This is not a proceeding to remove the appellees from office. According to the facts set up in the petition, they, by their own conduct, have removed themselves from office, and their place is already vacant; this action is merely to have a judicial determination of that fact. We are of opinion that the petition states a cause of action and that the court erred in sustaining the general demurrer.

But it is insisted that the city is without legal capacity to bring this action. By this it is meant, no doubt, that the mayor cannot sue unless authorized by the city council, and the petition shows that the city council was without power to give the authority for want of a quo-

rum. Neither do we believe this point is well taken. The charter of fifth class cities, Section 3615 of the statutes, authorizes the city to sue and be sued. By Section 3617, the mayor is made the chief executive officer and is given "general supervision over the affairs of the city." In addition to statutory authority the very duties imposed upon the city by law carry with them the inherent right to sue whenever it becomes necessary, in the performance of those duties. And the mayor as the chief executive officer, and having general supervision—that is, being general superintendent of the city by virtue of the statute—had the power to act in behalf of the city, and have suit brought in its name to secure proper relief.

"A stranger could not without authority prosecute a suit in the name of a municipality; but the corporate name may generally be used by any officer or board authorized to represent the corporate interest involved in the action." 28 Cyc., 176.

We are of opinion that the city has the right to bring this suit and that the mayor, by virtue of his office, is authorized to prosecute it in its name and behalf. For these reasons the judgment of the lower court is reversed and the case remanded. The demurrers will be overruled and further proceedings had in conformity with this opinion.