## BROWN v. DUFFUS.

1. **Habeas Corpus:** ON PETITION OF PRISONER AGAINST HIS BAIL: JURISDICTION OF SUPREME COURT. Plaintiff was charged in a preliminary information with a misdemeanor, and he waived examination, and gave bond, with defendant as surety, for his appearance at the next term of the district court. Afterwards defendant arrested him for the purpose of surrendering him to the sheriff of the proper county in his own exoneration. Plaintiff claims that the law under which he was charged is unconstitutional, and that he is, therefore, illegally restrained of his liberty by the defendant, and he applies to this court for a writ of *habeas corpus*. *Held* that, since plaintiff proposes in this court to test, in advance of his discharge, the constitutionality of the law under which his alleged criminality arose, the court has jurisdiction to grant the writ, and to discharge him, in case the law is found to be unconstitutional; for in that case the state has no further claim on his

sureties, and they have no right to arrest him for the purpose of their own exoneration.

2. ——: ——: ——: FICTITIOUS RESTRAINT. In such case the court would not be justified in declining to entertain the cause on the ground that the arrest was made by an agreement between the parties, for the very purpose of speedily determining the constitutionality of the statute, where such determination is of considerable importance to the public interest.

3. Constitutional Law: POWER OF GOVERNOR TO SUSPEND OTHER ELECTIVE STATE OFFICER: CODE, § 760. If section 760 of the Code provided for the absolute removal by the governor of an elective state officer before the expiration of the term for which he is elected under the constitution, it might reasonably be contended that the statute is unconstitutional; but since it only provides for a *suspension* of the officer, for the reasons therein stated, from the performance of official duties, and not necessarily from the emoluments of the office, *held* that it is not repugnant to the constitution in the point above raised, nor as an attempt to clothe the governor with judicial power.

SEEVERS, J., *dissenting*, and BECK, J., taking no part in the decision.

*Proceeding upon a Writ of Habeas Corpus.*

TUESDAY, MAY 12.

*Nourse & Kauffman* and *James G. Day*, for petitioner

*Galusha Parsons* and *A. J. Baker*, *Attorney-general*, for defendant and the State.

ADAMS, J.—On the seventh day of April, 1885, the petitioner, John L. Brown, presented to this court, in session at Davenport, a petition averring, in substance, that he was wrongfully restrained of his liberty at the city of Davenport by one J. H. Duffus, and he asked that a writ of *habeas corpus* should issue to test the legality of his imprisonment. The court granted the writ, which was served on Duffus, and he made return thereto. The Hon. A. J. Baker, attorney-general, and the Hon. Galusha Parsons, employed as special counsel for the state, appeared for the defendant, Duffus, but in the name of the state, and filed a motion to quash the writ; also, a demurrer to the petition, and an answer to the

petition. The petitioner filed a demurrer to the return to the writ, and to the answer filed in the name of the state. He also filed a reply to the answer. The proceedings were then continued to the April term, at Dubuque, where the several questions raised were presented at one hearing, and submitted together for determination.

We do not deem it necessary to set out the pleadings in full. The first question presented in argument pertains to the jurisdiction of the court to grant the writ, under the circumstances shown; the second, to the constitutionality of a certain provision of statute. The undisputed facts appear to be that the petitioner, Brown, is auditor of the state of Iowa, and was such on the fourth day of March, 1885, having been duly elected as such at the annual election of state officers in 1884; that on the day above mentioned Buren R. Sherman, governor of the state, filed an information against him before a justice of the peace of Polk county, in which he accused Brown of a misdemeanor in continuing to exercise the functions of his office as auditor after he had been suspended from the exercise thereof; that Brown was arrested and brought before the justice, and, having filed a plea of *not guilty*, and having waived an examination, he was held to bail, and gave a bond, with the defendant, Duffus, and one Pierce, as sureties; that afterwards Pierce gave Duffus an order in writing, as provided by statute, authorizing him to arrest Brown for the purpose of surrendering him to the sheriff of Polk county in exoneration of the bail; that under such order Duffus arrested Brown in the city of Davenport, where this court was then in session, and upon petition by Brown the writ of *habeas corpus* was granted by this court, as above set forth.

The petitioner does not deny that the governor made an order suspending him from exercising the functions of his office as auditor, and does not deny that he continued to exercise the functions of such office after the order was made, and

*1. HABEAS corpus: on petition of prisoner against his bail: jurisdiction of supreme court.*

does not derry that there is a provision of statute which makes such continuance a misdemeanor; but his position is that the statute authorizing the governor to make such suspension is unconstitutional and void, and that the order of suspension was consequently a void act, and that his continuing to exercise the functions of his office was accordingly not a misdemeanor, but a duty, which, under his oath of office, he was bound to perform. The state not only asserts the constitutionality of the statute, and the legality of all things done under it, but contends in addition that, even if the statute were unconstitutional, and the petitioner did not commit a misdemeanor in continuing to exercise the functions of his office after the order of suspension, the restraint imposed by Duffus is not illegal, as shown upon the face of the papers; and if not, that the court had no power to grant the writ, and ought now to sustain the motion to quash it. This question presents itself upon the threshold, and demands our first attention.

The position of the state is that Duffus incurred a liability for the appearance of Brown in the district court; that he incurred such liability under the statute which gave him a right to surrender Brown to the sheriff, and exonerate himself and his co-surety, and that he cannot properly be deprived of such right by a proceeding which should result in taking Brown from his custody and setting him at large. It must, we think, be conceded that Brown, having invited Duffus and Pierce to become his sureties, cannot be allowed to resort to any proceeding which should have the effect to render them liable upon the bond. But Brown proposes to test, in advance of his discharge, the question of the constitutionality of the statute under which it is said that his criminal liability has arisen; and his position is that, if the statute shall be held unconstitutional, and his innocence shall accordingly be declared by a court having jurisdiction to determine the same, the state could no longer have any claim upon his sureties; and we have to say that we think that his

Brown v. Duffus.

position in this respect must be sustained.   In our opinion, then, the court had jurisdiction to grant the writ.

It is claimed by the state, however, that the arrest of Brown by Duffus is collusive, and that there is enough upon the face of the papers and proceedings to show such fact.   But it is certain that, under the statute, Duffus had a right to arrest Brown, whether he was willing to be arrested or not; and we think that, however willing Brown might be that Duffus' rights should be accorded to him, we cannot say that the restraint is fictitious, and that Brown cannot be allowed to test the legality of it. Indeed, it seems to us that, as the question involved pertains simply to the constitutionality of a statute, and as its speedy determination is of considerable importance to the public interest, the mode adopted for its determination is rather to be commended than otherwise.

We come next to consider the statute under which the governor acted, and the constitutionality of which is drawn in question.   The statute consists of sections 759, 760, 761 and 762 of the Code, which are as follows: "Sec. 759.   Whenever, in the judgment of the governor, the public service requires it, he shall appoint a commission of three competent accountants who shall examine the books, papers, vouchers, moneys, securities and other documents in the possession or under the control of any state officer, shall make out a full, complete and specific statement of the transactions of the said officer with, for, or on behalf of the state, showing the true balances in each case, and report the same to the governor, with such suggestions as they may deem proper.

"Sec. 760.   Whenever any commission appointed as aforesaid, or under the provisions of section one hundred and thirty-two of chapter nine of title two of this Code, shall report that any officer has been guilty of any defalcation or misappropriation of the public money, or that his accounts, books and papers are improperly or unsafely kept, and that

*[margin note: 2. ——: ——: fictitious restraint.]*

*[margin note: 3. CONSTITUTIONAL law: power of governor to suspend other elective state officer: Code, § 760.]*

the state is liable to suffer loss thereby, the governor shall forthwith suspend such officer from the exercise of his office, and require him to deliver all the moneys, books, papers and other property of the state to the governor, to be disposed of as hereinafter provided.

"Sec. 761. After such suspension it shall be unlawful for such officer to exercise any of the functions of his office until such suspension shall be revoked; and any attempt to exercise said office after such suspension shall be deemed a misdemeanor, and shall subject the offender for each offense to the penalty of not more than one year's imprisonment in the county jail, and not more than one thousand dollars' fine, to be recovered and enforced as provided by law.

"Sec. 762. In every such case of suspension the governor shall appoint some suitable person to fill temporarily the office, and such person, having qualified as required by law, shall perform all the duties and enjoy all the rights to the said office belonging, until the removal of the suspension of his predecessor, or the election of a successor."

The governor, believing that the public service required the appointment of a commission to examine the books, papers, etc., of the auditor, appointed P. D. Ankeny, George W. Bristow and John C. Parish, who reported to him on the seventh day of February, 1885. The report is lengthy, and we cannot properly set it out. It is sufficient to say that, if correct, it showed that the auditor's accounts, papers and books were improperly and unsafely kept, and that the state was liable to suffer loss thereby. The governor, proceeding under this report and the statute above set out, made the order of suspension in question, and appointed Mr. J. W. Cattell to fill temporarily the office. But the petitioner refused to obey the order, and continued to hold possession of the books and papers until he was compelled to yield the possession by force. He relies, in the first place, upon article 4, § 22, of the constitution, which provides that "a secretary of state, auditor of state and treasurer of state shall be elected

by the qualified electors, who shall continue in office two years, and until their successors are elected and qualified, and perform such duties as may be required by law." As the constitution guaranties to the auditor a term of office for two years, it is contended that he cannot be removed except by a method provided by the same instrument. He cites and relies upon *Lowe v. Com.*, 3 Metc., (Ky.,) 237; *The Auditor v. Hardin*, 8 B. Mon., 668; *Brown v. Grover*, 6 Bush, 1; *Dullam v. Willson*, 53 Mich., 392; *State v. Pritchard*, 36 N. J. Law, 101; *State v. McClinton*, 5 Nev., 332; *Honey v. Graham*, 39 Tex., 1; *People v. Jewett*, 6 Cal., 291; *Fant v. Gibbs*, 54 Miss., 403.

In *Brown v. Grover*, above cited, the court said: "When the term of office is fixed by the constitution, and the method of trial and cause of removal is prescribed by the constitution, it is not competent for the legislature to prescribe any other method or cause for the removal of such officer." Several others of the cases cited hold substantially the same doctrine. The constitution of Iowa provides for the removal of an officer by impeachment, and does not provide for removal by the governor. There is much ground for contending, therefore, that, if the statute in question provides for the removal of an officer by the governor, it cannot be sustained. But the state contends that the statute does not so provide. To determine whether it does, we must have recourse to a careful examination of its language. The principal provision is in these words: "The governor shall forthwith suspend such officer from the exercise of his office." In our opinion the suspension of an officer from the exercise of his office is not necessarily to be construed as a removal. It would, perhaps, be equivalent to a removal during the time of suspension, so far as the officer's most important right is concerned, if the officer by such suspension were to be deprived of his emoluments; but the statute does not provide that he shall be. If a statute is susceptible of any reasonable construction which will render it constitutional, it is our duty to adopt such construction as will sustain it.

Now, it seems to us clear that an officer might be suspended from the exercise of his office in such limited sense as to affect merely his duties. If this is so, the act of the governor is not open to the objection set forth, nor to the objection, also made, that the governor is not vested with judicial power. His act does not amount to a judicial determination. Our view is strengthened by the fact that the manifest object of the statute can be secured by something less than a removal. The object is to secure the state from loss. This object is secured, so far as it can be by merely suspending the officer's acts, and by gaining possesssion of the books, papers, etc., of the office.

Again, the statute contemplates that the suspension may be temporary. This is not consistent with the idea of a removal in any proper sense. It is undoubtedly the duty of the governor to promptly investigate the matters specified in the adverse report, and hear such explanation and evidence as the officer may offer, and to remove the suspension, if he is satisfied that the report is incorrect, or that proper amends will be made, and the public interest protected. We are aware that in *Lowe v. Com.*, above cited, the supreme court of Kentucky, in passing upon a similar statute, seemed to regard the suspension of the acts of an officer as equivalent to a removal, and held the statute unconstitutional upon that ground. But we are not certain that the distinction which we make was especially insisted upon by the state. Besides, we do not feel greatly influenced by a single decision in a sister state upon such a question. The court of final jurisdiction in each state must judge mainly for itself of the meaning of the statutes of the state, and especially where the construction to be given involves a question of the constitutionality of the statute. The court must weigh its own doubts, if it has any, and sustain a statute even as against strong doubts, if it can be done by any reasonable construction.

We are aware that the power given the governor might be

abused. Much has been said, and forcibly said, by the petitioner's counsel upon this point. But the state must be allowed to protect itself in some way, and the power to protect it must be lodged somewhere. Besides, the hardship resulting from merely suspending the acts of an officer, without removing him or affecting him otherwise, cannot be regarded as a very serious one. The suspension is based upon the report of a commission. The hardship, where it is suffered, results mainly from the adverse report. The suspension follows as an act enjoined by law, and does not necessarily indicate what the governor's judgment is as to the correctness of the report. If the governor, after investigation, should refuse to remove the suspension, his refusal might be regarded as showing that he believed the report to be correct, and, moreover, that he did not have sufficient assurance that amends would be made. Such fact would, of course, be injurious to the reputation of the officer, except where his short-comings might be the result of physical or mental disability. But an officer, against whom an adverse but wrongful report has been made, should be glad of an opportunity to explain his action to the governor, and adduce evidence in rebuttal of the report, to the end that he might secure an indorsement of his action by the governor's official act in removing the suspension. We cannot presume that the governor would act perversely in the matter; on the other hand, we must presume that he would not. In our opinion the discharge from custody prayed for by the petitioner must be denied, and he must be

REMANDED.

SEEVERS, J., *dissenting.*—Being unable to concur in the foregoing opinion, it is proper that I should briefly state the grounds upon which I base my dissent. I concede that the governor was not required to determine whether the statute was constitutional or not, and therefore he had the power to appoint the commission, and, upon the coming in of the

report, to suspend the auditor. The statute evidently contemplates that the suspension may be temporary, and it just as clearly contemplates, in my judgment, that it may be permanent. It is conceded in the foregoing opinion that the plaintiff has the right to test the constitutionality of the statute in this proceeding, and it is practically conceded that the plaintiff is illegally restrained, and is entitled to be discharged, if the statute is unconstitutional. It is fundamental, and the constitution and statutes of this state are based on the thought, that no person can be deprived of a substantial right without an opportunity of being heard in defense of such right. The statute in question contains no such provision. The governor appoints the commission, and in so doing he is not required to consult or advise with the officer whose office is to be examined. There is no provision of the statute requiring the commission to give the officer an opportunity to be heard before it and make explanations.

Upon receiving the report of the commission, the governor, in his discretion, has the authority to suspend the officer; and, if the governor does so, the officer is deprived of the right to perform the duties of the office; and if the suspension is lawful, it is, to say the least, doubtful whether the officer is entitled to the emoluments of his office during the time it is in force. I regard it as undoubtedly true that, by reason of the suspension, the plaintiff has been deprived of a substantial right. If the commission reports that the state is "liable to suffer loss," the governor is not required to examine into the truth of the report, or to hear any excuses or explanations the officer may desire to make; but, on the contrary, the statute provides that he "shall suspend such officer from the exercise of his office, and require him to deliver all the money, books, papers and other property of the state to the governor."

It is intimated in the foregoing opinion, as I understand, that the governor should, after suspending the officer, proceed promptly to investigate the truth of the report. But

Brown v. Duffus.

the statute does not so require. The governor is not bound to make such investigation. He may do so if he chooses, and he probably has the power to revoke the suspension; but suppose he does not, then the temporary suspension becomes permanent. The constitutionality of the statute cannot be made to depend on the will of the governor to make or not make an investigation, or revoke the suspension at his will or pleasure. It is not suggested in the foregoing opinion that there is any statute which gives the plaintiff an opportunity to be heard, and to test the truth of the charges against him, in any court, or before any person or tribunal vested with judicial powers, and therefore I assume there is none.

The conclusion reached by me is that the statute in question is unconstitutional, because no provision is made whereby the plaintiff has the right to test the truth of the charges against him before some tribunal or person vested with judicial powers. The restraint of the plaintiff is illegal, and he should be discharged.

BECK, CH. J., did not participate in the decision of this cause, being prevented from attending the terms at which it was argued orally by the dangerous illness of his wife. Neither were any briefs or arguments on the part of defendant, nor the papers in the case, sent to him. He therefore took no part in its decision.