## Lewin v. Ft. Mitchell, et al.

(Decided June 11, 1912.)

### Appeal from Kenton Circuit Court
### (C. C. L. & E.).

1. Municipal Corporations—Trustees of Towns of Sixth Class—Election and Qualification.—The fact that the trustees of appellee town were elected in November, 1911, but did not qualify until the third Monday in January, 1912, did not operate to vacate their offices. But in any event they were de jure officers, and their failure to qualify on the first Monday in January, does not affect the validity of appellant's contract with them for street construction. They had color of title to their offices; they were not usurpers; nor were they interested in the contract except as citizens of the town.

2. Office and Officer—Qualification.—When a person is elected to office and a bond for the performance of his duties is not required, he should be permitted to qualify within a reasonable time after the day fixed for taking the oath, provided he has a reasonable excuse for the delay.

F. J. HANLON for appellant.

MYERS & HOWARD for appellees.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant sued Ft. Mitchell, a town of the sixth class, and five individuals who composed the board of trustees. It was alleged in the petition in substance, that at a public letting, he obtained a contract for the construction and improvement of streets in the town; that appellant executed bond for the faithful performance of the contract; that he was ready and anxious to

perform it; that the property owners abutting on the streets wished the execution of the contracts; that since he obtained the contract a question has arisen as to the legality of it in this: The trustees, appellees herein, were elected in November, 1911, but did not meet and take the oath of office as such on the first Monday in January, 1912; but did, in fact, take the oath of office and enter upon the discharge of their duties, the third day of January, 1912, and that their failure to take the oath of office on the first Monday of January, 1912, vacated the office; that at the time of the filing of the petition there was pending in the county court a motion to have it appoint other trustees for the town; and appellant alleges that these complications endanger his right to enforce a lien against the property abutting on the streets improved.

This is not a suit by appellant to oust appellees from their office. Indeed, such a right does not exist in appellant. It can be exercised alone by a claimant to the office or by the Commonwealth through its legally constituted officials. See the case of Stack v. Commonwealth, 26 Ky. L. R., 343. In King v. Kahne, 27 Ky. L. R., 1080, this court said:

"The gist of the action is that appellees are usurpers of the offices they hold. In lieu of the ancient writ of quo warranto, there is provided a common law action by Code (section 480, Civil Code) to prevent the usurpation of an office. The suit must be in the name of the person entitled thereto, or of the Commonwealth, and when in the name of the latter must be brought by or upon information of the attorney general; when the office is a city office. (Sections 483-4-5, Civil Code; Wheeler v. Commonwealth, 98 Ky., 59.)

"Though it were true that appellees had not qualified, and were usurpers of the offices they hold, appellant had not the right to maintain an action to oust them. It follows that the judgment of the circuit court sustaining the special demurrer to the petition must be affirmed."

See also section 483 of the Civil Code.

Conceding, for the purposes of this case, that appellees were deprived of the right to become members of the board of trustees by not qualifying on the first Monday of January after their election, it does not affect the validity of appellant's contract with the city in as

much as the individual appellees were elected to their positions and did qualify and assume their duties on the third day of January after their election, and, therefore, had color of title to their offices. They were not usurpers in the legal sense of that term; nor were they interested in the contract, except as citizens of the town, and were, under the repeated decisions of this court, in fact de facto officers. In Stine v. Berry, 96 Ky., 63, this court said:

"He may be regarded as an officer de facto, and his acts held to be lawful for the protection of others, but in so far as his acts as an officer affect him personally, he can have no protection."

In the case of Patterson v. Miller, 2 Met., 496, it appears that Miller was elected treasurer of Russell County, but was not a resident of that county at the time he was elected and was not, therefore, constitutionally eligible to hold the office. The court said that as he was elected and undertook the discharge of the duties of his office, he was a de facto officer and that as against every person except himself, his acts were valid and binding. To the same effect are the cases of Coquillard Wagon Works v. Milton, 137 Ky., 189; City v. Board of Education, 21 Ky. L. R., 731; Johnson v. Sanders, 131 Ky., 537; Ex Parte Denham, 110 S. W., 822; 33 Ky. L. R., 592; Desha's Admr. v. Harrison, 141 Ky., 692; Ruter v. Meechem Contracting Co., 143 Ky., 557; and Pence v. Frankfort, 101 Ky., 543. In the case last cited the court said:

"We think it may be stated, as a general rule, that the exercise of a power by a de facto officer which lawfully appertains to the office of which he has possession is valid and binding, where it is for the interest of the public or of any individual, other than the officer himself, to sustain the officer's acts."

We are of the opinion, however, that appellees were officers de jure; that they did not vacate their offices by qualifying on the third day of January instead of on the first Monday thereof. The rigid and harsh rule in regard to persons vacating their offices to which they have been elected, in failing to qualify and execute bonds on the first Monday in January after their election, comes from the language of section 3755, Kentucky Statutes. See Barnett v. Hart, County Judge, 112 Ky., 728; Commonwealth v. Yarbrough, &c., 84 Ky., 496, and

other cases to the same effect. Section 3755 of the statutes is as follows:

"If the official bond is not given, and the oath of office taken on or before the day on which the term of office to which a person has been elected begins, * * * the office shall be considered vacant, and he shall not be eligible thereto for two years."

The cases above cited hold that a person who has been elected to an office may qualify and execute his bond at any time after receiving his certificate of election up to and including the day upon which he is to take charge of his office. The statute above copied seems to apply alone to persons who not only have to take an oath of office, but also have to execute a bond for the faithful performance of his duties. It has no reference to officers who qualify by simply taking an oath. It was necessary for the court to give the statute this harsh and rigid construction because this court held in the case of Commonwealth v. Yarbrough, &c., supra, and the cases therein cited, that a bond executed by such an official after the last day given him to qualify, to-wit, the first Monday in January after his election, was not binding upon his sureties. This being true it was necessary for the court to refuse the bond and to qualify the officer after the first Monday in January. Section 3696, of the Statutes, which applies to the case at bar, is as follows:

"The board of trustees shall meet on the first Monday in January next succeeding each general municipal election, shall take the oath of office and elect one of their number chairman," etc.

The officials referred to in section 3755 are authorized by statute to qualify and execute their bonds at any time after receiving their certificates of election, up to and including the first Monday in January thereafter. The Statute simply requires that the board of trustees shall have a meeting on the first Monday in January and take the oath of office, thus giving them only one day in which to qualify. The Legislature certainly never intended that this should be mandatory; no reason or necessity can be given for it so being. In the case at bar, none of the sections of the statute referred to required appellees to execute a bond, and there is no reason for so requiring, as they do not handle any of the public's money. And we are of the opinion that a mere delay of one day ought not to be considered as sufficient to cause a

vacancy of their offices to which they had been elected. It is our opinion that when a person is duly elected to office and a bond for the faithful performance of his duties is not required, he should be permitted to qualify within a reasonable time after the day fixed for taking the oath, provided he has a reasonable excuse for the delay.

The judgment of the lower court is reversed and the case remanded for further proceedings consistent herewith.