## Baker v. Marcum, Sr.

(Decided October 22, 1926.)

Appeal from Clay Circuit Court.

1   Elections.—Nominee at primary, who failed to file certificate of nomination, held validly nominated by certificate of county chairman acting under Kentucky Statutes, section 1464; no action having been taken by party committee under section 1550-5.

2.   Elections—Use of Pasters at Election Held Unnecessary, where Name of Candidate Nominated by Certificate of County Chairman

was Already on Ballot, though Improperly Placed There (Kentucky Statutes, Section 1464).—Where name of nominee who failed to file certificate of nomination 45 days before election was improperly printed on ballot, and thereafter the same person was nominated by certificate of county chairman, under Kentucky Statutes, section 1464, held use of pasters at election bearing name of candidate so nominated to be pasted over his name already on ballot was not necessary.

3. Elections.—Election laws must be interpreted along sound and reasonable lines and not so technically as to defeat the will of the public or place unnecessary burden on electors.

MURRAY L. BROWN, MORRIS & JONES and MARTIN T. KELLY, for appellant.

ROY W. HOUSE and WILLIAM LEWIS & SON for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellee was nominated in the August primary, 1925, as the Republican candidate for jailer of Clay county. Shortly thereafter he received his certificate of nomination, but did not file the same forty-five days before the regular election as is required by law.

Appellant as an independent candidate filed her petition with the county court clerk with the required number of electors signing same, and filed it more than forty-five days before the regular election.

Although the failure of appellee to file his certificate of nomination in the time required by law created a vacancy in that nomination (Lewis v. Mosely, 215 Ky. 573) no effective steps were taken by the party committee under the provisions of section 1550-5 to fill that vacancy until after the ballots for the regular election had been printed with appellee's name wrongfully printed thereon because of his failure to file his certificate in time. Then after the printing of the ballots with appellee's name so wrongfully printed thereon as the Republican nominee the chairman of the Republican county committee recognizing the existence of a vacancy in such nomination, and acting under authority of section 1464, Ky. Stats., certified to the county court clerk the name of appellee as the nominee of the party to fill such vacancy, and designated him as such nominee; and also undertook in that certificate to provide for the use of pasters by the election officers at the regular election.

This was on the 31st day of October, 1925, only a few days before the regular election and at a time when the ballots for that election had already been printed.

At the election no pasters were in fact used, but as appellee's name had before the filing of that certificate with the county clerk already been wrongfully printed upon the official ballots, the electors instead of using the pasters or going through the useless form of pasting over his name already on the ballot a paster containing the same name, voted for him either in the party column or opposite his printed name on the ballot, and he received something more than 800 votes in excess of the number received by appellant.

It was also held in the case of Lewis v. Mosley, *supra,* that when a nominated candidate fails to file his certificate of nomination until after the expiration of the minimum time, he in effect resigns his nomination and creates a vacancy, and such vacancy may be filled in the manner provided by law by the party authorities, and such authorities may nominate the candidate for the vacancy who so negligently failed to file his certificate; and that such vacancy must be filled by action of the party committee if done before the ballots are printed, and by the chairman if done after they are printed.

That leaves for our consideration on this appeal only two questions necessary to be determined, to-wit: (1) was the nomination of appellee by the county chairman acting under the provisions of section 1464 a lawful nomination? and (2) did the fact that his name had before such nomination by the county chairman been wrongfully printed upon the ballot necessitate the use of pasters as provided in the statute, and were the votes so cast for him, without the use of pasters, invalid and wrongfully counted for him, if the county chairman's nomination was valid?

Section 1464 provides in part as follows:

"In case of the death, removal or resignation of any candidate after the printing of such ballots, and before such election, it shall be lawful for the chairman of the state, district or county political organization of which such candidate was a member to make a nomination to fill such vacancy."

Not only is it affirmatively alleged in appellant's (contestant) pleadings that on October 31st after the official

ballots had been printed the chairman of the Republican committee of the county certified appellee's name to the county clerk as the Republican nominee to fill such vacancy, but the certificate of nomination issued by the county chairman and filed by him with the county clerk on October 31st is on file and appears to be in all respects in compliance with the provisions of that and other statutes.

While that certificate undertakes in a faulty manner to provide for the use of pasters at the election, and while in fact no pasters were actually used, there is no doubt of the validity of the nomination of appellee under its terms to fill such vacancy.

The second question is a novel one, and has not heretofore been presented in any contested election case coming to this court, so far as our investigation goes. Unmistakably if the county chairman had nominated one other than appellee, and one whose name had not already been printed on the ballot, the use of pasters would have been necessary, for otherwise the votes cast for the candidate whose name had been wrongfully printed on the ballot could not have been counted for such person. But here we have a name wrongfully printed on the ballot when it was printed, and subsequently we have that individual whose name was so wrongfully printed, rightfully and lawfully nominated to fill a vacancy in the party nomination, and whose name is already on the ballot without the use of pasters.

To require the use of pasters, therefore, under these circumstances would be to interpret the law so as to require not only the clerks of election in the several precincts to do a foolish and futile thing, but would demand of the electors who desired to vote for appellee that they should, although his name was already printed on the ballot, write the same into another space and stamp opposite it.

From the nature of things the interpretation of election laws, designed by secret ballot to register the public will, must be along sound and reasonable lines, and not so ultra technical as either to defeat the will of the public or to place an unnecessary burden upon the electors.

Giving to the statute a sane interpretation under the facts presented, we are unwilling to hold that its requirement for the use of pasters is mandatory. While

appellee's name was wrongfully printed· upon·.the ballots when placed there, he ·subsequently, because of his nomi-nation by the' chairman, acquired the right either to have it :printed ·thereon ór tó have pasters containing it placed thereon. · To say then that ballots ·cast for 'him at the election—a time⁴ when his name was rightfully· on the· ballot—·could·not be counted for him; would not only be a perversion of any conceivable meaning of the statute, 'but: would be tó reverse the verdict· of the people ̈at the polls by such unauthorized construction.

Judgment affirmed.