## Howard v. Cockrell.

(Decided October 29, 1929.)

HENRY L. SPENCER and A. F. BYRD for appellant.

G. C. ALLEN, GRANNIS BACH and TURNER & CREAL for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Reversing.

The appellant, Sylvester Howard, and the appellee, S. J. Cockrell, who are brothers-in-law, and one William J. Landrum, were opposing candidates for the Democratic nomination for jailer of Breathitt county at the recent primary election. On the face of the returns, Cockrell received 1,798 votes, Landrum 1,707, and the contestant, Howard, 454. The certificate of nomination was accordingly awarded to Cockrell. Howard instituted the contest against him and Landrum, and they filed answers and counter contests. However, during the proceedings, Landrum filed an amended answer, withdrawing the allegations of his original one and admitting that he was not entitled to the nomination, and asked that it be so adjudged. The case was tried on the contest between the other two candidates, which resulted in a dismissal of the contest and the confirmation of Cockrell's certification of election. The case has been before this court on the question of the sufficiency of the notice, and this court held that it was properly given. See Howard v. Cockrell, 230 Ky. 581, 20 S. W. (2d); and Landrum v. Cockrell 230 Ky. 599, 20 S. W. (2) 464.

The case now before the court relates to the guilt or innocence of the parties with respect to violating the Corrupt Practice Act (Ky. Stats., sec. 1565b1 et seq., as amended). As to the appellee, Cockrell, the evidence shows that he is now the sheriff of Breathitt county, and George Bach is his chief deputy; that during his present term the emoluments of the office have been divided equally between these two men. At this primary Bach was the candidate for sheriff. It is admitted that these gentlemen were very friendly and interested in the election of each other. The sheriff's bank account was carried in the name of Cockrell, and a few days before the election Cockrell drew $1,000 of this fund, which it is claimed was charged to Bach, and was for his individual use. This money was changed into bills of small denomi-

nation and carried to the sheriff's office. A reluctant witness, closely allied with the contestee, testified that there was an attempt to make up a "slate," by combining a group of candidates, including Cockrell, and pooling their money, but this fell through because some of them could not put up any money; however, that there was an agreement between Cockrell and some other candidates, including Bach, and that he and his brother, who withdrew as an opponent of Bach, contributed $750 to the fund. At the meeting at which this agreement was reached, a number of names of workers were discussed.

While this specific incident and meeting is not categorically denied by Cockrell or Bach, they do deny that there was any kind of agreement or slate made up to which Cockrell was a party. It stands confessed, however, that some of those men, who that witness said were discussed as workers for this ticket, did diligently work at different polls on election day, handing out slips of paper with the name of Cockrell, Bach, and perhaps other candidates on them, and solicited votes for them. It is conceded that these men did buy votes for that ticket. But it is said that they did not have any of Cockrell's money, and were spending that of Bach and the other candidates. Cockrell seeks to be absolved from the guilt of these men, on the ground that he had no knowledge of what they were doing, and that he had no connection with them. It would be an unsophisticated man indeed who would believe that a number of workers at the polls selected by a candidate were using large sums of money and buying votes for him without any knowledge on his part of their purpose and action. We are convinced that the arrangement was the result of an understanding and agreement between appellee and these candidates and workers. Their responsibility is contestee's, and he and those who benefited by this nefarious conduct are, as principals, just as guilty as the agents who actually bribed the voters.

Of course, if overzealous, through lawless, friends should, without notice or knowledge of the candidate, commit such offenses, the candidate ought not to be held accountable; but, when they act with knowledge on the part of the candidate, the beneficiary of the corruption ought to suffer the consequences, and not the electorate. The knowledge on the part of the candidate may be shown by direct evidence, or it may be deduced from facts and circumstances giving rise to a reasonable inference of

such knowledge according to the common understanding of reasonable men. There is evidence that the contestee himself personally purchased votes. This is denied by him, and his denial is supported by the testimony of those whom it is said he bribed. It is not necessary to determine his guilt of these specific charges under the conflicting evidence, for the acts of those workers at the polls conceded to have been illegal must, under the circumstances proved, be charged to the contestee.

As to the contestant, Howard, the evidence of his guilt is not quite as clear as that of the contestee. It is, however, shown that upon more than one occasion Howard was guilty of influencing voters corruptly. These witnesses, however, are impeached either by specific evidence of bad reputation or by their own confessions of regularly selling their votes.

But Goebel Allen, circuit court clerk of Breathitt county, freely and boldly testified that he went to the precinct at which Howard was working with $380, and bought votes for a ticket or combination to which the contestant, Sylvester Howard, was a party. A man would be guileless indeed if he believed that Howard had no knowledge of this offense, committed in his behalf. The circumstances, as well as his admitted unworthiness, contradict Allen's testimony that Howard was innocent of the commission by him of this crime. Howard was an old, experienced, election warrior, and it is unbelievable that all this was taking place all day in his presence, and in part for his benefit, without having knowledge of it.

We may here repeat our statement in the recent case of Asher v. Broughton, etc., 230 Ky. 165, 20 S. W. (2d), to-wit:

"No man should enjoy or profit by that which he has obtained through the violation of laws enacted to protect elections from the evil influence exerted by the bribe giver and the bribe taker. The man who bribes a voter, or suffers it to be done with his knowledge and in his interest, is not a fit person to hold public office. The law has so declared, and the sooner such persons and the public realize that such laws are to be fearlessly and sternly enforced, the sooner will bribery and corruption be numbered among the things that once were."

The Legislature has declared in no uncertain terms that one who violates the purity of an election is un-

worthy of its benefits, and that he shall not be permitted to hold the office he sought. It again becomes the duty of this court to give force to that mandate, and to declare that none of these parties is entitled to the nomination which he asked of the voters of his party.

The judgment is therefore reversed for consistent proceedings.

Whole court sitting.