## Lovely v. Cockrell.

(Decided February 20, 1931.)

A. F. BYRD and HENRY L. SPENCER for appellant.

KASH C. WILLIAMS, GRANNIS BACH, G. C. ALLEN and TURNER & CREAL for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

At the November election in 1929, S. J. Cockrell was the Democratic candidate and Joseph Lovely was the Republican candidate for the office of jailer of Breathitt county. The result, as certified by the county board of election commissioners, indicated that Cockrell received 3,317 votes and Lovely 2,382 votes, and the certificate of election was issued to Cockrell. Lovely instituted a contest of the election, and on final hearing his petition was dismissed, and he appeals.

Several grounds were alleged in the pleadings as the basis for the attack on the result of the election as certified, but on this appeal the only grounds relied upon

are: (1) The appellee, Cockrell, was ineligible to be a candidate for the office of jailer and all votes cast for him in the November election were illegal; and (2) he violated the Corrupt Practice Act. Ky. Stats.; sec. 1565b-1 et seq.

Cockrell was a candidate at the August primary for the Democratic nomination for jailer. Sylvester Howard was one of his opponents. Cockrell was awarded the certificate of nomination, and Howard instituted a contest. The circuit court adjudged Cockrell entitled to the nomination, but, on appeal to this court, it was adjudged that both Howard and Cockrell had violated the Corrupt Practice Act and that neither of them was entitled to the nomination. Howard v. Cockrell, 231 Ky. 278, 21 S. W. (2d) 455, 457. This created a vacancy and the Democratic committee of Breathitt county met and nominated S. J. Cockrell as the Democratic candidate for jailer.

The opinion in Howard v. Cockrell, supra, was delivered on October 29, 1929, and it is suggested that the committee met and nominated Cockrell on October 26, 1929, three days before a vacancy had been declared to exist. It is insisted by appellee that this date was incorrectly copied in the transcript, but, be this as it may, the chairman of the Democratic executive committee of Breathitt county on November 2, 1929, pursuant to section 1464, Kentucky Statutes, nominated Cockrell to fill the existing vacancy and certified to the county court clerk his name as the Democratic nominee. The ballots had then been printed with Cockrell's name thereon, and, while section 1464 provides for the use of pasters containing the name of the candidate nominated by the chairman of the county political organization, it was held in Baker v. Marcum, Sr., 216 Ky. 210, 287 S. W. 696, that, where the name of a candidate nominated by the county chairman was on the ballot, although improperly so, because prematurely printed thereon, the use of pasters is unnecessary.

It is vigorously insisted by counsel for appellant that appellee was not eligible to be nominated by either the Democratic committee of Breathitt county or by the chairman of the committee, and they place strong reliance on the concluding words of the opinion in Howard v. Cockrell, supra, which are:

"The Legislature has declared in no uncertain terms that one who violates the purity of an election

is unworthy of its benefits, and that he shall not be permitted to hold the office he sought. It again becomes the duty of this court to give force to that mandate, and to declare that none of these parties is entitled to the nomination which he asked of the voters of his party."

We adhere unreservedly to the views expressed in the excerpt quoted from Howard v. Cockrell, supra, but in that opinion the court was referring to the nomination sought at the August primary. The candidate adjudged guilty of a violation of the Corrupt Practice Act in the primary election was deprived of the nomination. It was not said in that opinion that one guilty of a violation of the Corrupt Practice Act in a primary election should be excluded from holding the office for which he was a candidate or any other office in the state. It was merely held that he was not entitled to the nomination which, on the face of the returns, he had won. Had the contesting candidate not been guilty of a violation of the Corrupt Practice Act, he would have been awarded the nomination and the contestee, under section 1550-6, Kentucky Statutes, would have been ineligible to run for the same office at the ensuing general election. It was the purpose of section 1550-6 to prohibit an unsuccessful candidate in the primary from becoming a candidate at the general election against his successful opponent, but it does not provide that one who has been a candidate in a primary shall thereafter be excluded from a nomination by his party or election by the people when a vacancy has been created, nor does any other section of the Corrupt Practice Act or of the laws governing elections contain such a prohibitory provision. It was so held in Halteman v. Grogan, 233 Ky. 54, 24 S. W. (2d) 921.

It is argued that a violation of the Corrupt Practice Act was not involved in the Halteman case, but counsel are in error, since a violation of section 1565b-4 was involved. That section requires each candidate to file a statement setting forth in detail each item of contributions or expenditures fifteen days before the primary and final election, and any person failing to comply with its provisions is liable to a fine not to exceed $500. A failure by mere inadvertence to file the required statement

does not involve moral turpitude on the part of the offending candidate as does a violation of that section of the Corrupt Practice Act prohibiting bribery at an election, but the Legislature has made no distinction between violations of the various sections of the act in so far as future disqualifications for holding office or accepting nominations is concerned. The act does not confer upon the courts the power to declare that a candidate who has violated any of its provisions shall be ineligible in the future to accept nominations or hold office. It does not purport to deal with a vacancy created by a judgment of a court declaring void a nomination by reason of a violation of the provisions of the act.

Section 1587, Kentucky Statutes, provides that "whoever shall bribe another shall, on conviction, be fined from fifty dollars ($50.00) to one hundred dollars ($100.00), or imprisoned for ten to ninety days, or both so fined and imprisoned, and be excluded from office and suffrage." It is argued that this section means that if one is holding office, he shall be removed, and, if he is seeking office, he shall not be permitted to accept it. Before one can be excluded from office and suffrage under this section, he must be convicted of bribery in a criminal proceeding. The statute does not contemplate that its penalty shall be assessed upon the mere adjudication in a civil proceeding that a person has been guilty of bribery at an election. We conclude that appellee was not ineligible to be nominated to fill the vacancy created by the judgment in the case of Howard v. Cockrell, supra.

In his notice of contest, appellant alleged that Cockrell and other designated candidates on the Democratic ticket entered into an agreement by which they were each to contribute to a pool, or fund, certain sums of money to be used in the election for the purpose of bribing and influencing voters to vote the Democratic ticket and for each of the parties to this agreement, and that, pursuant to the agreement, Cockrell contributed to the alleged pool, or fund, the sum of at least $2,000, and that the money contributed by the parties to the agreement was used by them and by their friends and supporters in the various precincts in Breathitt county for the purpose of bribing and influencing voters to vote for each of such candidates, including the contestee, and that the money was so used with his knowledge and consent. He

further alleged that the candidates who entered into this agreement selected a campaign committee of which G. L. Allen was chairman, and that a large portion of the money contributed by the designated candidates was placed in the hands of this committee and was used by the committee in bribing and influencing voters to vote for the designated candidates, including contestee, and all of which was done with his knowledge and consent.

There is no proof tending to show the alleged conspiracy between the designated candidates to corruptly influence voters, nor is there any proof that any of them turned over any substantial sum to the campaign committee. The evidence as to any activity on the part of the committee is slight.

Appellant virtually abandoned his charge of a conspiracy between the candidates but a large volume of proof was taken by which he sought to show that votes had been bought with appellee's knowledge and by his procurement. It is conclusively shown that money was illegally expended in a number of precincts in behalf of the Democratic ticket, and appellant contends that the proof is sufficient to warrant the inference that appellee had knowledge of and approved the illegal expenditures. To set out the proof in a more than cursory fashion would unduly lengthen this opinion, and we shall content ourselves by setting out the substance of the evidence relative to the more flagrant violations of the Corrupt Practice Act by election workers.

Four witnesses testified that they saw Irvin Turner talking with a number of persons known to be vote sellers at Elcatawa precinct No. 3. After these persons voted he took them aside and handed them something. He was a brother of William Turner, candidate for county judge on the Democratic ticket. Thomas A. Long testified that Turner asked him to get three voters named Lunce to vote the straight Democratic ticket and for Clay Williams, a candidate for magistrate, and he would pay them $2 each. Turner denied that he had this conversation with Long, and denied that he spent any money illegally in the precinct. He was county school superintendent, and he testified that he was at Elcatawa precinct for the purpose of working for a candidate for the county board of education and for his brother, who was a candidate for county judge.

Two witnesses testified that Anderson Spicer was buying votes for the Democratic ticket at Cope Branch precinct No. 5. Spicer admitted that he spent money at the election, but claimed that it was his own money and that he got no part of it from Cockrell and never talked with Cockrell about the election. He said that he was especially interested in the candidacy of Mrs. Nell Hollon, his kinswoman, who was the Democratic candidate for county clerk.

The strongest evidence in the record tending to show corruption and bribery related to George's branch precinct No. 9. A number of witnesses testified that they saw Louis Combs, who was a brother of Lee Combs, the unopposed Democratic nominee for sheriff, buying votes for the Democratic ticket. Combs admited that he bought votes, but claimed that he used his own money, and that he spent it for the Democratic ticket because there had been some false rumors that his brother had entered into an agreement with the Republicans whereby he would have no opposition and the witness wanted to show his and his family's good faith in support of the Democratic ticket. He said that no one gave him any money to spend at the election, and that neither Cockrell nor any other Democratic nominee who had opposition, knew of his purpose to spend the money.

Three witnesses testified that Hoy Miller was present in Elliottsville precinct No. 13 using money for the Democratic ticket. They saw him give $4 to Jake Holbrook and $3 to Arcanis Holbrook. Miller testified that he drew some of his own money from the bank and spent it and some money which Lee Combs, the Democratic candidate for sheriff, gave him, in Elliottsville precinct. He said that neither Cockrell nor any other Democratic nominee who had opposition gave him any money.

A number of witnesses testified that Roy Clemmons, Mrs. Roy Clemmons, and Johnny Clemmons bought votes in the Big Orchard precinct No. 17 for the Democratic ticket. There is evidence that Arch Morris purchased votes for the Democratic ticket at Wolf Coal precinct No. 21. Morris said that he was primarily interested in the candidacy of Thomas Watts for magistrate, and that neither Cockrell nor any other candidate for county office furnished him with any money to spend or knew of his

spending it. There is evidence tending to show the illegal use of money in a few other precincts but the above are the most glaring examples of illegal expenditures.

Appellee testified that he made no contribution to the campaign committee and that he furnished no one with money to use in the election and did not know of any one's purpose to spend money. He denied that he spent any money in the election except $6, $5 for advertising and $1 for recording his certificate of nomination. No witness testified that appellee gave him, or any one, money to spend or that appellee had knowledge of any illegal expenditures. The amount of money which the evidence shows was used was not so large as to charge Cockrell with notice of what was going on, nor was it sufficient to have changed the result of the election. Appellant only claims that 73 voters were shown to have received money for their votes but the evidence as to many of these is unconvincing. We cannot say there was such fraud and bribery in the election that it cannot be determined who was elected. Baker v. Duff, 165 Ky. 846, 178 S. W. 1123.

There is no direct evidence that appellee knew of the proven illegal acts. This court will not hesitate to deprive a successful candidate of the fruits of victory where the evidence, though circumstantial, connects him with the illegal expenditure of money in the election, but we have frequently said that evidence which merely raises a bare suspicion of knowledge on his part of the illegal acts of his friends and supporters is not sufficient to authorize a court to declare him guilty of a violation of the law. Manning v. Lewis, 200 Ky. 732, 255 S. W. 513; Murrey v. Kirkman, 231 Ky. 191, 21 S. W. (2d) 240. In Douglas v. Greene, 231 Ky. 44, 20 S. W. (2d) 1026, 1028, where the proof was stronger than the proof in this case, it was said:

"It is true that we have held that the knowledge called for by the Corrupt Practice Act may be established by circumstantial evidence, Charles v. Flanary, 192 Ky. 511, 233 S. W. 904; but the evidence should do more than merely raise a suspicion, even though the suspicion be strong, that the candidate knew of such violations, Napier v. McIntosh, 220 Ky. 539, 295 S. W. 856; Duff v. Salyers, 220 Ky. 546, 295

S. W. 871; Burchell v. Hubbard, 218 Ky. 344, 291 S. W. 751. The facts of this case are no stronger than those in the Napier and Duff cases, supra, where we held that 'knowledge' on the part of the successful candidates of violations of the Corrupt Practice Act by their workers had not been established. It is well known that in many elections, supporters of candidates go to extreme lengths to elect their candidates, and do many things which the candidates themselves would not have countenanced had they known of them. Especially is this true where there is a factional fight in the political party of the candidate as this record strongly indicates was the fact here. While it may seem strange that the appellee did not know of the raising of the campaign fund by his brothers, and while all the circumstances we have detailed, especially that of the appellee referring Sebastian to Duff, may raise a very strong suspicion of appellee's knowledge of what was going on, yet, when all this is taken in the light of the sworn testimony of appellee and of all of these workers, to the effect that appellee knew nothing of their violations in his behalf of the Corrupt Practice Act, we are constrained to hold that the circumstances relied upon by the appellant fall short of the proof of that knowledge necessary to deprive the appellee of the certificate of nomination awarded him.''

While the evidence is sufficient to create a suspicion in the mind of a disinterested person of appellee's knowledge of the illegal acts of his supporters, it falls short of the standard established in Douglas v. Greene, supra, and the cases therein cited, for depriving the candidate of his certificate of election.

On the whole case, the court is of the opinion that the finding of the chancellor on the facts cannot be disturbed.

Judgment affirmed.

The whole court sitting.