## Veal v. Thompson.

Oct. 14, 1941.

Elmer Drake and S. Jewell Rice for appellant.

R. W. Keenon, Robert M. Odear and Harry B. Miller for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

At the August, 1941, primary election appellant and appellee were opposing candidates for the Democratic nomination for the office of jailer of Fayette county. The vote was tabulated by the election commissioners and the results showed that appellant received 3,836 votes and appellee received 6,026, thus giving appellee a majority of 2,190 votes. The election commissioners issued a certificate of nomination to appellee. Soon thereafter, and within the time fixed by law, appellant filed this action in the Fayette circuit court contesting the nomination of appellee, charging him with various violations of the Corrupt Practice Act, Kentucky Statutes, Section 1565b-1 et seq.

Appellant (plaintiff below) alleged, in substance, for his cause of action that prior to the day of the primary election appellee procured large sums of money to be used by him and by his election supporters for the purpose of buying and bribing persons to vote for him on the day of the said primary election and provided large sums of money to bribe the electorate of said county; that appellee distributed large sums of money with divers of his friends and election supporters and the workers to be used by them to buy and purchase votes for him on the day of the election and instructed and directed said workers and supporters to buy votes for him and that pursuant to appellee's orders and directions, and with his knowledge, procurement and consent, divers of his representatives and workers did buy, purchase and bribe many hundreds of voters to vote for appellee and all those persons whose votes were purchased did vote for appellee, and that appellee violated the Corrupt Practice Act by bribing voters to cast their ballots for him, and his friends and supporters procured others to do so with the knowledge, consent and approval of appellee contrary to the provisions of the Corrupt Practice Act, and that appellee did not receive a majority or plurality of the legal votes cast in the primary election and by reason of the facts aforesaid appellee

is not entitled to the nomination of the said office of jailer of Fayette county and not entitled to have his name printed on the ballot as such nominee; that appellant is entitled to said nomination and to have his name placed upon the ballot to be used in the November, 1941, election as the nominee of the Democratic party for the office of jailer of Fayette county.

Appellant further alleged that appellee knowingly pooled money with other candidates to be spent on election day by their workers, friends and supporters to bribe voters and that large sums of money, the exact amount being unknown to the pleader, were pooled and spent by appellee in said election for the purpose of bribing the voters to vote for appellee and other conspirators; that said money was spent for the said purposes by appellee, his workers, friends and other candidates to thus illegally procure the nomination of appellee. Appellant then specifically set out and named a large number of voting precincts in Fayette county, alleging that said supporters of appellee used whisky and money to influence and purchase voters in the named precincts for appellee, and further alleged the use of chain ballots and other irregularities and violations of the election laws by the friends and supporters of appellee and charged that it was all done by the procurement, knowledge and consent of appellee.

Appellee denied in his answer all allegations of the petition in reference to his violation of the Corrupt Practice Act or other irregularities or violations of the election laws, and denied that any of his friends and supporters committed any of the alleged acts by his procurement, knowledge, consent or approval. He denied all allegations of the petition necessary to his defense to appellant's cause of action.

Upon the issues thus made the evidence was taken by deposition in the time fixed by order of the court, and upon trial of the case the chancellor held and adjudged that appellant's evidence was insufficient to show that appellee had violated any provision of the Corrupt Practice Act or that same was violated by his friends and supporters by his procurement, knowledge or consent, or otherwise insufficient to sustain the allegations of appellant's petition. The court dismissed the petition and adjudged that appellee was duly and legally nominated to the office of jailer of Fayette county and

entitled to the certificate of nomination thereto and dismissed appellant's petition. This appeal follows.

Mr. Veal, the appellant, gave his deposition but he testified only as to his qualifications and eligibility to hold the office in question, and that he had not violated in any way the provisions of the Corrupt Practice Act.

Austin Moore, the next witness called for appellant, testified in regard to a conversation which he said he had with appellee on the 27th day of May, 1941. Mr. Moore testified that in that conversation appellee said that "Everything was going to be all right; he said that we have $3,000.00. I asked him what he meant by 'we' and he said that he and five other candidates had put up $500.00 each and the money was in Bradley's Bank." He further said, however, that appellee did not give the names of the candidates who put up the money. The witness was asked if on a later occasion he found out or was told by any candidate the name of any person who put up the money, and the witness said it came to him on a number of occasions by "hearsay" but not by actual knowledge from appellee nor in his hearing or presence. He further said that he did not know whether or not any candidates were slated with each other for the purpose of furthering their interest in the election. The witness further testified that at the same time and place appellee said that he had got $1,000 with which he was going to employ one hundred girls to work at the precincts but he did not state the nature of the work to be done by the girls. Mr. Moore further testified that sample ballots were used on the day of the election marked for a slate of candidates composed of appellee, a Mr. Lewis who was candidate for county clerk, Porter Land who was the candidate for the nomination for sheriff, and in some instances Dudley Burke who was the opponent of Mr. Moore, the witness, for county commissioner.

Since Austin Moore's evidence is the strongest evidence adduced in behalf of appellant, we will dispose of his evidence before considering other evidence. Appellee denied having made the statements in reference to the pool of money testified to by Moore, and denied that he had pooled money with any candidate or set of candidates, or that he had spent any money directly or indirectly in the procurement of his nomination to the office of jailer except what is shown in his expense ac-

count filed with the county court clerk. He further denied that he had procured friends and supporters to spend money for him unlawfully or otherwise and that he had violated any provisions of the Corrupt Practice Act and if any of his friends and supporters had done so it was without his procurement, knowledge or consent. Briefly stated, appellee's evidence, if taken as true, exonerates him from any violations of the Corrupt Practice Act in any way or manner.

In reference to the testimony of Austin Moore, if it be taken as true despite the denial by appellee, it is to be noted that it does not show the purpose or the intended use of the alleged pool of money by appellee and other candidates, whether it was to be used for the purchase of votes or other unlawful purposes, or to be used for legitimate purposes such as paying office rent, stenographic hire, stationery, postage, hiring of automobiles for the purpose of conveying voters to the polls, and many other legitimate things for which money may be used in the furtherance of a campaign.

In Turner v. Linton et al., 270 Ky. 297, 109 S. W. (2d) 642, 645, the petition in that case substantially charged a conspiracy to violate the Corrupt Practice Act by the use of money in the purchase of votes or other unlawful purposes coupled with the pooling of such money in order to make effective the conspiracy. We said:

"The grouping of a number of candidates for mutual support by lawful means does not itself constitute an unlawful conspiracy. A conspiracy, to be unlawful, must be a common agreement to use unlawful means, or means not unlawful to gain an unlawful end. See Leech v. Farmers' Tobacco Warehouse Co., 171 Ky. 791, 188 S. W. 886."

It may be conceded, however, that the evidence is sufficient to raise a suspicion that the alleged pool of money was to be used unlawfully, yet a mere suspicion, or suspicious circumstances is not sufficient. In the Turner case, supra, it is further said:

"It is not sufficient that a strong suspicion of bribery has been created. The evidence must be carefully weighed, its credibility measured, and its probative value determined. I am unable to find that it is sufficient."

To a like effect see Conway v. Arnold, 270 Ky. 128, 109 S. W. (2d) 399, 401, wherein it is said:

"The suspicious circumstances may indicate there was an agreement to violate the Corrupt Practice Act by these two men. That is all. * * * If it should be held that the relationship of the husband and father was sufficient to infer agency, still specific proof of any violation of the law by them is not presented in the record."

To the same effect, see the case of Prewitt v. Caudill, 250 Ky. 698, 63 S. W. (2d) 954, 963, which deals with the question of imputed knowledge of a candidate of unlawful use of money in his behalf. It is pointed out in that case that the Corrupt Practice Act does not fasten liability upon the candidate by the implication of that doctrine. And, it is further said:

"It does, of course, permit the courts to infer a knowledge on the part of the candidate from evidence showing that he was aware of certain facts and circumstances. That is but to recognize proof of actual knowledge by circumstantial evidence."

In Douglas v. Greene, 231 Ky. 44, 20 S. W. (2d) 1026, it is held that actual knowledge of the candidate of the illegal acts of another in his behalf is an undispensable element to be established but it cannot be inferred from merely suspicious circumstances of a vague character.

Appellant relies strongly upon the case of Howard v. Cockrell, 231 Ky. 278, 21 S. W. (2d) 455, 456, to substantiate his contention that appellee had knowledge of the unlawful acts of his friends and supporters. Counsel for appellant quotes in his brief what this court said in reference to the knowledge of the candidate, saying:

"It would be an unsophisticated man indeed who would believe that a number of workers at the polls selected by a candidate were using large sums of money and buying votes for him without any knowledge on his part of their purpose and action."

The court further said that it was convinced that the arrangement was the result of an understanding and agreement between the candidate and workers. The opinion in that case discloses that there was evidence of a substantial nature, some being direct, which was

corroborated by strong circumstances, tending to show that those candidates had actual knowledge of and were parties to the unlawful acts committed by their supporters at the polls. In the case at bar we have no positive or direct evidence of appellee's knowledge of the unlawful use of money or other violations of the Corrupt Practice Act and, as above stated, the evidence and circumstances is insufficient to amount to actual proof, but only creates a suspicion of knowledge on the part of the appellee. We do not think that the facts and circumstances related by the witness Austin Moore, once appellee's denial is considered, amounts to evidence of such dignity and character required to deprive a candidate of his office or nomination to an office and thus thwart the will of the voters.

A number of other witnesses in addition to Austin Moore gave their depositions in behalf of appellant. Dr. A. J. Steiner testified, in substance, that there was an election booth behind an animal hospital operated by him at the East Second Street precinct in Lexington, and that on the day of the election he saw ballots being shown by colored people, but the witness did not know the persons showing the ballots nor did he know for whom they were working. Another witness testified that he was at the Southern Depot precinct on election day and saw money being passed, and that a man named Kelley was taken around a corner of the building where they were voting and was given $2 and a marked ballot but he did not state for whom the ballot was marked or what candidate the workers were supporting. Another witness testified that she saw voters given marked ballots and money but she did not know who they were nor for what candidate they were paid to vote, or who the workers were supporting. Another witness testified that he saw sample ballots marked for appellee for jailer and for Poter Land, Higgins Lewis and Mr. Burke and the man slipped some money out of his pocket and gave $2 of it to a voter.

There was also evidence of a chain ballot being used in one precinct. One of the marked ballots was recovered from a voter and was marked for a slate of candidates including appellee, but the evidence does not show that appellee had any connection therewith or knowledge thereof. So far as the record discloses this was a voluntary act of the friends and supporters of appellee.

A number of other witnesses testified to certain irregularities and violations of the election law committed in various precincts on the day of the election, but we do not think it would serve any useful purpose to encumber this opinion by detailing the evidence. It is sufficient to say that while the evidence shows numerous violations of the election law by many workers at the polls, yet it is indefinite in most instances as to whether or not such violations were committed in the interest of appellee. We have carefully examined the evidence of the various witnesses for appellant, all of which is in substance along the line of the evidence we have detailed above. Furthermore, a large portion of their evidence is hearsay and therefore incompetent. And, in addition to this, we find that a large portion of evidence of the witnesses for appellant, in fact about as strong evidence as he has except that of the witness Austin Moore, was taken purportedly in rebuttal at a time and in a manner fixed by order of the court for taking rebuttal evidence in contest cases. But it is largely confined to matters in chief rather than in rebuttal to matters testified to by appellee and his witnesses, and for that reason such evidence cannot be considered against appellee. We may further say, however, that if such evidence were competent and considered it is insufficient to connect appellee with any violations of the Corrupt Practice Act.

In addition to appellee's own evidence which we have already reviewed herein, a number of other witnesses testified in his behalf. In most instances the witness strongly contradicted the testimony of the witness who testified for appellant.

In a memorandum opinion written by the chancellor and filed with the record, the chancellor stated, in substance, that the record disclosed many flagrant violations of the election law and strongly condemned the reprehensible conduct of election officers as well as election workers at the polls, and indicated an intention of calling the matter to the attention of the grand jury. The chancellor was of the further opinion, and so stated in his opinion, that plaintiff (appellant) had failed to establish by competent evidence that appellee participated in or had actual knowledge of the illegal acts of which appellant complains in his petition.

It is a well established rule that this court will not disturb the finding of the chancellor on conflicting and

doubtful evidence. To warrant a reversal by this court it must clearly appear that the finding of the chancellor is against the preponderance of the evidence. Since the evidence in the case before us is conflicting and doubtful, we are unable to say that the judgment of the chancellor is against the preponderance of the evidence.

Judgment affirmed.

Whole Court sitting, except Judge Thomas.