Paul H. PETREY, etc., et al., Appellants,

v.

CITY OF HAZARD, Kentucky, a Municipal Corporation, Appellee.

Court of Appeals of Kentucky.

May 12, 1961.

Alva A. Hollon, Hazard, for appellants.

W. E. Faulkner, Hazard, for appellee.

PALMORE, Judge.

At an election held on November 3, 1959, the people of Hazard approved a $525,000 general obligation bond issue for the purpose of constructing sewer improvements and a sewage disposal plant. As required by Const. § 157, two-thirds or more of those voting on the question assented.

At the same time four new city commissioners were elected pursuant to KRS 89.-390 et seq. They proceeded to take office, and in January of 1960 the newly constituted board of commissioners enacted

ordinances providing for the issue and sale of the voted bonds and increasing the ad valorem tax rate accordingly. Meanwhile, a suit had been filed on November 16, 1959, seeking to disqualify the four newly elected commissioners on the ground they had violated the Corrupt Practices Act by campaigning on the promise that they would turn their statutory salaries (except for $1 per year) back to the city.

On March 25, 1960, this court handed down an opinion holding that the four men in question had violated the Corrupt Practices Act, reversing the circuit court judgment to the contrary, and directing a new judgment declaring their election void. A petition for rehearing filed in due course was overruled on November 23, 1960. See Sparks v. Boggs, Ky.1960, 339 S.W.2d 480. Thereafter the Governor appointed the same four men to fill the resulting vacancies on the board, and another ordinance was enacted ratifying the ordinances theretofore adopted.

In this action by the city against a class representative testing the validity of the 1960 municipal proceedings it was contended that the ordinances violated Const. §§ 157 and 158 and that all actions taken while the four commissioners heretofore mentioned were purporting to act as members of the board, both before and after the Governor's appointments, were invalid. The trial court held the ordinances valid.

The taxpayer does not argue the §§ 157–158 questions in this court, and we assume his objections in that respect are abandoned.

With respect to the validity of the official actions taken by the board of commissioners during the pendency of the corrupt practices litigation the position taken by appellant is confuted by the very authorities on which he relies for support. The applicable principles are stated in 67 C.J.S. Officers § 146, pp. 447–448, as follows:

"The acts of an officer de facto are as valid and effectual where they concern the public or the rights of third persons, until his title to the office is judged insufficient, as though he were an officer de jure, especially where the existence of the office de jure cannot be challenged. The legality of the acts of such an officer cannot be collateraly attacked in a proceeding to which he is not a party. However, in a suit to which one exercising public office is a party, he cannot justify his acts on the grounds that he was a de facto officer. The rule cannot be invoked for the advantage of the officer himself, or of one who is * * * chargeable with knowledge of the defect in the incumbent's title to the office. In order to be valid, the acts of a de facto officer must comply with the requirements of law to the same extent and in the same manner as valid acts of de jure officers."

See also Coquillard Wagon Works v. Melton, 1910, 137 Ky. 189, 125 S.W. 291; Lewin v. Town of Ft. Mitchell, 1912, 148 Ky. 816, 147 S.W. 922.

The election, certification, and ensuing actions of the four commissioners in qualifying for and assuming office certainly created the color of title necessary to sustain their official actions against this collateral attack. Willis v. Skinner, 1925, 211 Ky. 340, 277 S.W. 490. It makes no difference that a contest was in progress. The color of office was good until the matter was finally settled and closed on receipt of the mandate of this court, which was released the day the petition for rehearing was overruled.

Though it is not strictly necessary to reach the question of whether the unseated commissioners were eligible for appointment by the Governor, since it has been litigated here and the answer may serve to prevent another suit we shall dispose of it.

Const. § 150 bars from office any person convicted of certain offenses. Again, however, it will be observed that this is a collateral attack, in which the allegedly disqualified officers are not parties. "Title to public office may not be attacked collaterally * * *. Ordinarily the question of the status of an incumbent of an office * * can only be determined in a direct proceeding brought for that purpose, to which he is a party." 67 C.J.S. Officers § 74, p. 308.

It has been held also that the Corrupt Practices Act "does not confer upon the courts the power to declare that a candidate who has violated any of its provisions shall be ineligible in the future to accept nominations or hold office." Lovely v. Cockrell, 1931, 237 Ky. 547, 35 S.W.2d 891, 892.

Disqualification under Const. § 150 requires conviction in a criminal proceeding. Com. v. Kentucky Jockey Club, 238 Ky. 739, 38 S.W.2d 987, 1001. The four commissioners mentioned in this case have not been convicted of any crime.

Judgment affirmed.