EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

SEARS, ROEBUCK AND CO., Defendant-Appellee.

No. 546, Docket 80–6173.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1980.

Decided May 27, 1981.

Carol Cresswell Moschandreas, Washington, D. C., Leroy D. Clark, Gen. Counsel, E. E. O. C., Constance L. Dupre, Vincent Blackwood, Washington, D. C., for plaintiff-appellant.

Howard T. Anderson, Charles Morgan, Jr., and Associates, Chartered, Washington, D. C., Arthur J. Ginsburg, Frankfurt, Garbus, Klein & Selz, New York City, for defendant-appellee.

Before MANSFIELD and NEWMAN, Circuit Judges, and CARTER, District Judge.*

* Of the Southern District of New York, sitting by designation.

ROBERT L. CARTER, District Judge:

This is an appeal from a dismissal of a suit brought under §§ 706(f)(1) and (3) and § 707 of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e–5(f)(1) and (3) and 2000e–6, in which the Equal Employment Opportunity Commission ("Commission" or "EEOC") alleged that defendant Sears, Roebuck and Company ("Sears") has engaged in a pattern and practice of illegal discrimination against blacks and Hispanics at its facilities in Brooklyn and White Plains. The district court, Duffy, J., dismissed the complaint without prejudice on the grounds that (1) the Commission Chairman's charge on which the complaint was based was defective because it was verified after his term on the EEOC had expired; and (2) the Commission's decision to conciliate only on a nationwide basis, rather than with respect to the two facilities that were the subject of the suit, constituted a failure to conciliate in good faith as required by §§ 706(b) and (f)(1) of the Civil Rights Act.

The first ground for dismissal stems from the scheduled expiration of William H. Brown, III's term as Commission Chairman on July 1, 1973.[1] After that date Brown continued in office pursuant to the holdover provision § 705(a), as amended, 42 U.S.C. § 2000e–4(a) (1976), which was adopted by Congress in 1972 to insure continuity in the Commission's work. Under this provision a Commission member retains his or her office until a successor is appointed, except that the member may not serve "for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate."[2] Brown signed the charge against Sears on August 30, 1973, just prior to the expiration of sixty days. However, he did not execute a sworn verification of the charge as required by § 706(b) of the Act, as amended, 42 U.S.C. § 2000e–5(b), until September 11, 1973, twelve days after the expiration of sixty days. As of August 30, no successor's name had been submitted to the Senate, although on August 17 President Nixon had announced his intention to nominate John H. Powell, Jr. to succeed Brown. Powell's name was not submitted, however, until September 5, 1973, because Congress had adjourned for its summer recess from August 3 until September 5.[3]

Whether Brown was a *de jure* commissioner when he verified the charge depends upon the construction of the phrase "in session." The Commission maintains that Congress was not "in session" within the meaning of the holdover provision during its summer recess and that such recess in effect tolled the expiration of sixty days until September 5, the day Congress reconvened. The submission of Powell's name on that date would then have allowed Brown to continue in office until the date of Powell's confirmation on December 23, 1973.

1. The terms of EEOC Commissioners begin on July 2 and expire on July 1, this pattern being traceable to the Civil Rights Act's becoming law on July 2, 1964. For evidence of Brown's term in particular see 115 Cong.Rec. 6436 (1969).

2. As amended in 1972, § 705(a) reads, in relevant part:

. . . Members of the Commission shall be appointed by the President by and with the advice and consent of the Senate for a term of five years. Any individual chosen to fill a vacancy shall be appointed only for the unexpired term of the member whom he shall succeed, and all members of the Commission shall continue to serve until their successors are appointed and qualified except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted.

3. The law remains unclear as to whether Powell's name could have been submitted while Congress was in summer recess. See *Kennedy v. Sampson*, 511 F.2d 430 (2d Cir. 1974) (Presidential vetoes are returnable during an intra-session recess if Congress provides for the receipt of messages from the President during the recess). At the time of Powell's nomination, which came before *Kennedy*, it was apparently assumed that nominations could not be submitted to Congress during a recess. We need not decide whether *Kennedy* undermines this assumption.

The Commission further argues that even if Brown was not a *de jure* commissioner on September 11, his verification would still be valid because he was at least a *de facto* commissioner at the time he executed it. Brown remained in uncontested possession of the office of Commission Chairman until December 23, and during that time continued to perform the functions of the office. He remained on the federal payroll in that job classification and his authority was unchallenged. However, the district court found the *de facto* officer doctrine inapplicable on the ground that Brown knew or should have known that his tenure had expired.

The issue of the Commissioner's failure to conciliate in good faith stems from the Commissioner's insistence on all conciliation being nationwide in scope. Although conciliation was attempted with Sears for fourteen months and included twenty-eight separate meetings between the parties' representatives, supplemented by extensive correspondence, at no time did it focus specifically on the two facilities that are the subject of this lawsuit. No settlement proposals were made based upon the firing practices at the White Plains and Brooklyn stores, and Sears was given no notice prior to the filing of this suit that the Commission intended to single out practices at these two facilities. The district court held that notwithstanding the massive expenditure of time on conciliation efforts, the requirement of § 2000e–5 was not satisfied.

The instant action is one of four closely related cases raising similar issues of law. The Commission has brought suits in several localities against Sears, all based upon the same charge issued and verified by Commissioner Brown. Two of the four actions were dismissed for improper verification. These include the instant action, hereafter call *Sears* [New York], and *EEOC v. Sears, Roebuck and Co.*, 490 F.Supp. 1245 (M.D.Ala.1980) ("*Sears* [Alabama]"). The other two, however, explicitly rejected dismissal based on improper verification. *EEOC v. Sears, Roebuck and Co.*, 22 CCH E.P.D. ¶ 30,768 (N.D.Ga.1980) ("*Sears* [Georgia]"); *EEOC v. Sears, Roebuck and Co.*, 504 F.Supp. 241 (N.D.Ill.1980) ("*Sears* [Chicago]").

All four district courts have held that Brown was not a *de jure* commissioner on September 11. Following the precedent established in *Lewis v. Carter*, 436 F.Supp. 958 (D.D.C.1977), each has construed the phrase "in session" to encompass the Congressional summer recess as well as the days of actual meetings. We see no reason to disagree with these holdings, nonetheless, we do disagree with Judge Duffy's conclusion that the action should be dismissed for improper verification since Brown was at least a *de facto* commissioner when he verified the charge and, regardless of his status after August 30, the technical nature of the defect, which was cured within 12 days and caused no prejudice to Sears, would not justify dismissal.

■ The *de facto* officer doctrine was developed to protect the public from the chaos and uncertainty that would ensue if actions taken by individuals apparently occupying government offices could later be invalidated by exposing defects in the officials' titles. *Re Manning*, 139 U.S. 504, 506, 11 S.Ct. 624, 625, 35 L.Ed. 264 (1891); *Norton v. Shelby County*, 118 U.S. 425, 441–42, 6 S.Ct. 1121, 1125, 30 L.Ed. 178 (1886). The doctrine has generally been applied to individuals who are in possession of an office, are performing the duties of the office, and who maintain an appearance of right to the office. *See e. g. Waite v. Santa Cruz*, 184 U.S. 302, 323, 22 S.Ct. 327, 334, 46 L.Ed. 552 (1902). All three criteria are met by Brown's activities as Commission Chairman in September, 1973.

■ In view of the manifest ambiguity in the phrase "in session," and the fact that no judicial construction of that phrase in the holdover provision had been rendered prior to September, 1973, it cannot be said that Brown was clearly disqualified from retaining his office at the time of the verification. At most his tenure may have appeared questionable, but the fact that an officer's title may be questionable does not defeat application of the doctrine. *Heyland v.*

*Wayne Independent School District No. 5,* 231 Iowa 1310, 4 N.W.2d 278 (1942); *Petrey v. Hazard,* 346 S.W.2d 534 (Ky.1961).

 Since the primary purpose of the doctrine is to protect the public and the government agencies which act in reliance on the validity of an officer's actions, the fact that the officer himself knew or should have known that he lacked official authority would not be dispositive of the issue. More directly pertinent is the appearance to others at the time. Because Brown had every appearance of being Commission Chairman on September 11, he was an officer *de facto* with "the same validity and the same presumptions attached to his actions as to those of an officer *de jure.*" *Nofire v. United States,* 164 U.S. 657, 661, 17 S.Ct. 212, 213, 41 L.Ed. 558 (1897). In verifying the charge Brown was not seeking to further any personal interest of his own, but rather the work of the Commission itself. The exception to the *de facto* officer doctrine for officers seeking to further their own interests in litigation does not apply where the interest being furthered is simply that of the public agency which they serve. Compare *State v. Levy,* 113 Vt. 374, 34 A.2d 370 (1943) and *Mansur v. Morris,* 355 Mo. 424, 196 S.W.2d 287 (1946) with *United States v. London,* 424 F.Supp. 556 (D.Md. 1976), *aff'd sub. nom. United States v. Clerkley,* 556 F.2d 709 (4th Cir. 1977), *cert. denied sub. nom. London v. United States,* 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978) and *United States v. Groupp,* 333 F.Supp. 242 (D.Me.1971), *aff'd,* 459 F.2d 178 (1st Cir. 1972).

 Both *Sears* [Georgia], *supra* and *Sears* [Chicago], *supra,* found the doctrine applicable to Brown's verification of the charge. *Sears* [Alabama], *supra,* considered the issue immaterial because Brown would have had the capacity to correct the defect in the charge even if he had not been an officer *de facto* at the time of the verification. The decision of the district court in *Sears* [New York] to dismiss for improper verification was erroneous insofar as it was premised on the inapplicability of the *de facto* officer doctrine.

 Moreover, even if we agreed with the court below on the inapplicability of the *de facto* doctrine, dismissal for failure to verify would still be unwarranted. Federal regulations have treated the "failure to swear" as a technical defect curable by amendment. 29 C.F.R. § 1601.11(b) (1973), currently 29 C.F.R. § 1601.12(b) (1980); *see Weeks v. Southern Bell Tel. & Tel. Co.,* 408 F.2d 228, 231 (5th Cir. 1969) (private party charge). The defect was cured within twelve days of the expiration of Brown's term, and Sears suffered no substantial prejudice as a result of that delay. As the court stated in *Sears* [Georgia]:

> Chairman Brown was a commissioner during the period leading up to the filing of charges against Sears and was undoubtedly well-informed of the allegations. Regardless of the technical defects of his tenure, his verification performed what the statute intended—verification by a responsible person with adequate knowledge and reasons to believe that defendant had committed unlawful employment practices.

22 F.E.P. Cases at 460. The case is distinguishable from *EEOC v. Appalachian Power Co.,* 13 F.E.P. Cases 1294 (W.D.Va.1976), *aff'd,* 568 F.2d 354 (4th Cir. 1978), where the initial lack of verification remained uncured throughout the proceedings. Although a complete absence of verification affords a basis for dismissal, *EEOC v. Appalachian Power Co., supra,* a mere defect in title at the time of verification does not.

However, we affirm the dismissal on the second ground. The Commission's insistence on nationwide conciliation failed to satisfy Title VII's requirement that "the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S. § 2000e–5(b).

 Although in general the Commission should be given wide latitude in shaping both the general framework of conciliation and the specific offers made, *see EEOC v. Zia Co.,* 582 F.2d 527, 533 (10th Cir. 1978), the Commission's discretion is not unlimited:

Once having determined that a respondent has violated Title VII the Commission must make a genuine effort to conciliate with respect to each and every employment practice complained of. . . . *EEOC v. Sherwood Medical Industries*, 452 F.Supp. 678, 683–84 (M.D.Fla.1978). While conciliation need not always take place within a framework restricted to discussing only those facilities which are the subject of suit, the framework chosen must afford a fair opportunity to discuss the practices at those installations. In this particular case nationwide conciliation did not accomplish this purpose. Employment practices at the White Plains and Brooklyn stores necessarily were submerged in a broader discussion focusing on over 3,000 separate sites. No settlement proposals were issued for these two stores. Sears was given no opportunity to reform its practices in Brooklyn and White Plains, as distinguished from all the others, prior to instigation of the suit. Certainly the Commission did attempt to conciliate with Sears, but it was not the intention of Congress that "the Commission could attempt conciliation on one set of issues and having failed, litigate a different set." *EEOC v. E. I. DuPont De Nemours and Co.*, 373 F.Supp. 1321, 1336 (D.Del. 1974), *aff'd*, 516 F.2d 1297 (3d Cir. 1975).

Overall we think it would have been preferable for the district court to stay proceedings to promote renewed conciliation rather than dismiss the action. The extensiveness of the Commission's conciliation efforts militate against dismissal. However, the statute contemplates that the decision of whether to stay proceedings or dismiss the action is committed to the trial court's discretion. 42 U.S.C. § 2000e–5(f)(1). Since conciliation was patently inadequate with respect to the two stores in question, and the dismissal was without prejudice, we decline to find an abuse of discretion in the trial court's decision, even though we might have decided the matter differently.

Affirmed.